FONAR CORPORATION and Dr. Raymond Damadian,
Appellants/Cross-Appellees,

v.

JOHNSON & JOHNSON and Technicare Corporation,
Appellees/Cross-Appellants.

Appeal Nos. 86–1005, 86–1019.

United States Court of Appeals,
Federal Circuit.

June 16, 1987.

Sidney David, Lerner, David, Littenberg, Krumholz & Mentlik, of Westfield, N.J., argued, for appellant/cross-appellee Fonar Corporation. With him on the brief, were Joseph Littenberg, William L. Mentlik and John R. Nelson.

Stephen B. Judlowe, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, argued, for appellee/cross-appellant Johnson & Johnson. With him on the brief, were Francis J. Murphy and Eve Kunen.

Before MARKEY, Chief Judge, RICH and ARCHER, Circuit Judges.

MARKEY, Chief Judge.

Appeal and cross-appeal from a judgment of the United States District Court

for the District of Massachusetts, 630 F.Supp. 581, 230 USPQ 105 (1986) (Keeton, J.). In Appeal No. 86–1005, Fonar Corporation and Dr. Raymond Damadian (collectively Fonar) (1) appeal from an order granting a judgment notwithstanding the verdict (JNOV) and holding that defendants Johnson & Johnson and its subsidiary Technicare Corporation (collectively J & J) have not infringed or induced infringement of claims 1 and 2 of U.S. Patent No. 3,789,-832, and (2) seek a new trial on the issues of infringement and validity of claims 7, 8 and 10 of that patent. We affirm the judgment that claims 1 and 2 are not infringed and deny Fonar's request that this court order a new trial.

In Appeal No. 86–1019, J & J appeals from a judgment entered on a jury verdict that J & J failed to establish invalidity or unenforceability of claims 1 and 2 of U.S. Patent No. 3,789,832. We vacate the judgment appealed from and dismiss that appeal as moot.

## BACKGROUND

### I. *The Invention*

Fonar Corporation is the exclusive licensee of U.S. Patent No. 3,789,832 ('832 patent), entitled "Apparatus and Method for Detecting Cancer in Tissue," issued February 5, 1974 to Raymond V. Damadian, on an application filed March 17, 1972. The '832 patent discloses an apparatus and method employing nuclear magnetic resonance (NMR).

NMR techniques rely on the fact that the nuclei of some atoms, including hydrogen atoms, have a "spin", which causes them to act like tiny bar magnets. When exposed to an external magnetic field, they align with it just as a compass needle aligns with the earth's magnetic field. If aligned nuclei absorb applied electromagnetic energy of proper high frequency, however, they jump to a higher energy state and out of alignment with the external magnetic field. Under proper conditions, excited nuclei in a sample can generate a signal that can be detected. In a process called "relaxation," when the applied high frequency is removed, the nuclei release their absorbed energy and realign with the external magnetic field, while the signal decays. Numbers called "spin-lattice relaxation time" ($T_1$) and "spin-spin relaxation time" ($T_2$) communicate information about the physical state of the nuclei in a sample.

In 1970, Dr. Raymond Damadian conducted research to test his theory that hydrogen nuclei in water molecules in cancerous tissue would exhibit spin-lattice and spin-spin relaxation times different from those of water molecules in normal tissue. After obtaining encouraging results, Dr. Damadian applied for and obtained the '832 patent.

Claims 1 and 2 of the '832 patent read:

1. A method for detecting cancer comprising:

a. measuring and establishing standard NMR spin-lattice relaxation times and spin-spin relaxation times for both normal and cancerous tissue of the type under analysis using as an indicator nuclei at least one nuclei which exhibits deviant behavior in cancerous tissue;

b. measuring the NMR spin-lattice relaxation times and spin-spin relaxation times for the suspected tissue to determine the extent of deviant behavior of the indicator nuclei; and

c. comparing the values obtained in (b) against the standards obtained in (a).

2. The method of claim 1, wherein the indicator nuclei are cell water protons.

In the late 1970s, Dr. Damadian constructed an NMR apparatus large enough for a human being to be placed within it. Since then, a medical NMR industry (now called Magnetic Resonance Imaging, or MRI) has developed. Doctors use NMR machines to help them decide what is wrong with their patients and what to do about it.

NMR imaging machines display NMR response signal amplitude from points in the body to form an image on a screen. NMR signal amplitude depends on three factors, of which $T_1$ and $T_2$ make the greatest contribution, but NMR imaging does not

require numerical computation of $T_1$ and $T_2$.

## II. *Procedural History*

J & J manufactures NMR imaging machines. On September 20, 1982, Fonar sued J & J, alleging that J & J had willfully infringed and induced infringement of the '832 patent, and that J & J had engaged in unfair competition. J & J answered that the '832 patent was invalid and not infringed, and counterclaimed that the '832 patent was invalid and unenforceable for failure to disclose "relevant material facts" to the Patent and Trademark Office.

At the beginning of trial, Fonar withdrew its unfair competition claim and limited the asserted patent claims to method claims 1, 2, 7, 8 and 10 of the '832 patent. J & J apparently limited its counterclaim, as well, to those claims. Trial was conducted, and the jury rendered its verdict, only on those claims.

The district court conducted a 23–day jury trial on the liability phase of the case in October and November 1985. The jury answered special verdict questions in accordance with Fed.R.Civ.P. 49(a), including eight questions on infringement. The jury found that J & J had infringed or induced infringement, both literally and under the doctrine of equivalents, of claims 1 and 2, but had not willfully done so. The jury found claims 7, 8 and 10 not infringed. As Judge Keeton's opinion recounts, 630 F.Supp. at 581–82, 230 USPQ at 105–06, the jury found claims 1 and 2 valid and enforceable, and claims 7, 8 and 10 invalid.

J & J moved for JNOV, or in the alternative, for a new trial. The district court granted that portion of J & J's JNOV motion requesting a holding of noninfringement of claims 1 and 2, but denied that portion requesting a holding that claims 1 and 2 were invalid and unenforceable. The court also denied J & J's motion for a new trial.

## III. *The District Court's Opinion*

The "central dispute", said Judge Keeton, was "whether reasonable persons could find that the evidence supports contentions of infringement of the method claims as permissibly interpreted." 630 F.Supp. at 584, 230 USPQ at 107.

Fonar interpreted the phrase "measuring and establishing standard" $T_1$ and $T_2$ values in claim 1 and dependent claim 2 as meaning the experience and images carried in the minds of doctors. Judge Keeton, however, concluded that Fonar's interpretation was "extraordinary" and "impermissible—a meaning that cannot be accepted by a reasonable person." 630 F.Supp. at 586, 230 USPQ at 109. Judge Keeton said:

> The argument becomes a distortion of common sense meaning when [Fonar] assert[s] that a diagnostician is "measuring and establishing standard" NMR relaxation times when, with accumulated experience, the diagnostician learns to draw inferences from the shapes of images observed during extensive experience, stores in personal memory those images as standards, and then compares the standards with the images seen as the diagnostician examines suspected tissue for the purpose of detecting cancer. The words of Claims 1 and 2 will not bear the interpretation [Fonar] thus place[s] upon them.

630 F.Supp. at 587, 230 USPQ at 110. Judge Keeton concluded, "I cannot sustain [Fonar's] arguments that the jury's answers should be construed as findings supported by evidence that using comparative intensity values of NMR from adjacent tissues to produce images is, or is the equivalent of, practicing the several steps of the methods of Claims 1 and 2." *Id.*

Judge Keeton denied J & J's motion for judgment notwithstanding the verdict that J & J had not proved invalidity of claims 1 and 2 by clear and convincing evidence, saying the evidence supported that verdict. 630 F.Supp. at 589, 230 USPQ at 111. Respecting enforceability, Judge Keeton ruled "there is support in the evidence for the jury finding that [J & J] has failed to prove that Dr. Damadian or his attorney failed to disclose to the Patent Office relevant information that they knew or should have known that a reasonable examiner would have considered important in allowing or

rejecting the application." 630 F.Supp. at 590, 230 USPQ at 112.

On January 31, 1986, the district court entered a judgment that J & J had infringed no claims of the '832 patent, that claims 7, 8 and 10 of the '832 patent were invalid, and that J & J had not proved invalidity or unenforceability of claims 1 and 2. 630 F.Supp. at 590, 230 USPQ at 112.

## ISSUES

(1) Whether the district court erred in granting J & J's motion for JNOV on infringement of claims 1 and 2 of the '832 patent.

(2) Whether Fonar is entitled to a new trial on infringement and validity of claims 7, 8 and 10 of the '832 patent.

(3) Whether the portions of the judgment dealing with validity and enforceability of claims 1 and 2 of the '832 patent are moot.

## OPINION

### I. *Grant of J & J's Motion for JNOV on Infringement*

#### A. *Standard of Review*

■ To convince this court that the trial judge erred in granting J & J's motion for JNOV on infringement of claims 1 and 2, Fonar must show that there was substantial evidence to support the jury's findings. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1571, 1 USPQ2d 1081, 1085 (Fed.Cir.1986); *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1512, 220 USPQ 929, 936 (Fed. Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984); *see Rios v. Empresas Lineas Maritimas Argentinas,* 575 F.2d 986, 989–90 (1st Cir.1978) (affirming denial of JNOV where jury could "reasonably" have reached its verdict on the record). " 'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), *cert. denied,*

469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984).

The jury's verdict of infringement of claims 1 and 2 depended on construction of claim 1. To obtain a reinstatement of that verdict, Fonar must show that reasonable jurors, after reviewing all the evidence, could have concluded that users of J & J's NMR machines infringe claims 1 and 2 when they employ the mental images they have acquired through experience. *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.,* 739 F.2d 604, 613, 222 USPQ 654, 661 (Fed.Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984).

■ We conclude that the district court correctly determined that *no* evidence, and thus no substantial evidence, supports a finding that users of J & J's machine practice the method of claims 1 and 2 of the '832 patent. The jury's verdict that J & J infringed and induced infringement of those claims therefore cannot stand.

#### B. *Infringement*

■ The first step in determining infringement is to construe the claims. *E.g., Moeller v. Ionetics, Inc.,* 794 F.2d 653, 656, 229 USPQ 992, 994 (Fed.Cir.1986); *McGill Inc. v. John Zink Co.,* 736 F.2d 666, 671, 221 USPQ 944, 948 (Fed.Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984); *Autogiro Co. v. United States,* 384 F.2d 391, 401, 181 Ct.Cl. 55, 155 USPQ 697, 705 (1967). As the district court instructed the jury, construction of disputed claims requires reference to the specification, the prosecution history, and the other claims. *Moeller,* 794 F.2d at 656, 229 USPQ at 994; *McGill,* 736 F.2d at 673–75, 221 USPQ at 949–50; *Autogiro,* 384 F.2d at 397–99, 155 USPQ at 702–04. Expert testimony, including evidence of how those skilled in the art would interpret the claims, may also be used. *Moeller,* 794 F.2d at 657, 229 USPQ at 995; *McGill,* 736 F.2d at 675–76, 221 USPQ at 950. The second step in determining infringement is to decide whether properly interpreted claims encompass the alleged infringing method. *Moeller,* 794 F.2d at 656, 229 USPQ at 994; *McGill,* 736

F.2d at 671, 221 USPQ at 948; *Autogiro*, 384 F.2d at 401, 155 USPQ at 705.

### 1. *Fonar's Contentions*

Fonar states in its brief that "the meaning which [Fonar] ascribed [at trial] to the term 'standard' as used in claim 1 of the Damadian patent was just that—a baseline or reference established for purposes of later comparison." Fonar says "in using NMR imaging apparatus for the detection of cancer, one must first generate and become familiar with NMR images of normal and cancerous anatomy ( ...). These images of normal and cancerous anatomy then serve as standards or references against which NMR images of suspected anatomy can be compared." Fonar then says "it has been and is [Fonar's] contention (supported by more than substantial evidence) that infringement occurs when users of [J & J's] imaging equipment compare images obtained for suspect tissue with images previously obtained for known normal and known cancerous tissue of the same type."

This court has carefully reviewed all the "substantial evidence" Fonar cites in its briefs. Although the record contains extensive testimony about what users of J & J's machines actually do, none of the cited testimony is about infringement of a properly interpreted claim. Four of the five witnesses on whose testimony Fonar relies never even mention the '832 patent. Dr. Lufkin's testimony is the only evidence Fonar cites that refers to claims 1 and 2. That testimony compares the claims of the '832 patent to the skills that doctors practice when they use J & J's machines. It is not evidence in support of Fonar's contention that "standard" as used in claim 1 of the '832 patent means a "baseline" of "images" stored in a doctor's memory.

### 2. *Extrinsic Evidence*

Fonar makes no argument that the '832 patent specification, the other claims, or the prosecution history, all of which the jury had before it, support its theory of infringement of claim 1 and dependent claim 2, as indeed they do not.

The '832 patent specification describes experiments Dr. Damadian conducted with tissues from normal rats and rats with tumors. The specification discloses how Dr. Damadian computed $T_1$ and $T_2$ values for hydrogen nuclei in the water of those tissues, and displays the computed values in tables of numbers. The patent does not specifically call the $T_1$ and $T_2$ values "standards", and does not otherwise define "standards", though the specification does refer to "standards" and "tables of standard values" in the context of recorded numerical data. The patent contains no reference whatever to "imaging" or "images".

Though inventors may be their own lexicographers, they must use words in the same way in the claims and in the specification. *McGill*, 736 F.2d at 674, 221 USPQ at 949; *Autogiro*, 384 F.2d at 397, 155 USPQ at 702–03. Because the specification does not use the word "standard" to mean *images stored in a doctor's memory*, it does not support Fonar's theory that "standard" as used in claim 1 means such images and that the claims are infringed by use of such images.

Nonasserted apparatus claims 12 and 15 use the word "standard" in a manner more consistent with the specification and distinct from the manner now contended for by Fonar. The reference in claims 12 and 15 to "reference tables" as comprising the standards refutes Fonar's theory that "standard" in claims 1 and 2 is met by images stored in a doctor's memory and his or her experience in interpreting those images.

### 3. *Conclusion*

Because Fonar has pointed to no evidence that supports its theory that the term "standard" as used in claim 1 is met by mental images and experience of doctors, Fonar has not shown that substantial evidence supports the jury's verdict that J & J literally infringed claims 1 and 2 of the '832 patent. Moreover, Fonar does not explain how the jury could have found infringement under the doctrine of equivalents. Because reasonable jurors could not

have found infringement of claims 1 and 2 except by adopting Fonar's erroneous theory and interpretation, we have no plausible basis from which to conclude that substantial evidence supports the jury's verdict that J & J infringed claims 1 and 2 under the doctrine of equivalents. Clearly, the use of doctor's memorized images and experience, if it could be considered a performance of the claimed method at all, could not be considered a performance in a substantially same way. *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950).

We conclude that reasonable jurors, after reviewing all the evidence, could not have found claims 1 and 2 of the '832 patent to have been infringed by employment of the mental images and experience of the users of J & J's NMR machines. Judge Keeton properly granted JNOV. *Bio-Rad*, 739 F.2d at 613, 222 USPQ at 661.

## II. *Fonar's Argument for a New Trial*

Fonar argues that a new trial is required on validity and infringement of claim 7 and dependent claims 8 and 10.[1] The sole ground for that argument is an assertion that the district court gave an erroneous jury instruction with respect to clause (f) of claim 7. The argument is spurious.

Clause (f) of claim 7 reads:

f. comparing the values obtained in (e) with predetermined like values for normal and for cancerous tissue, said comparison indicating the existence and degree of malignancy.

In the course of instructing the jury, the district court listed all six steps of claim 7, including clause (f):

6. [clause (f)] Comparing the T-1 and T-2 values obtained with predetermined like values for normal and for cancerous tissues to determine the existence and degree of malignancy.

Fonar filed no motion for a new trial, and indeed no post-trial motions at all. It is established, however, that a party who had

timely objected to an instruction, as Fonar apparently did here, may raise it on appeal as a basis for a new trial, even though that party had filed no post-trial motions. 6A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 59.14 (2d ed. 1986); *see Braunstein v. Massachusetts Bank & Trust Co.*, 443 F.2d 1281, 1285 (1st Cir. 1971).

Fonar says the district court committed "prejudicial error" in "rewording" clause (f) of claim 7 in its instructions instead of quoting that clause directly. Fonar says the "rewording" implied that the phrase "said comparison indicating the existence and degree of malignancy" is a limitation of the claim, whereas Fonar says that phrase was merely an indication of a desired result. We fail to see how the phrase appearing in the claim and setting forth what the comparison indicates can be simply expunged as stating a result and as not constituting a limitation. Nor can we see a meaningful difference between "comparison indicating" and "to determine" in the context of the entire instruction.

■ Moreover, if the district court had erred in paraphrasing clause (f), Fonar could obtain a new trial only by showing that that error affected its substantial rights. 28 U.S.C. § 2111; Fed.R.Civ.P. 61. Fonar has not even approached the making of such showing. Nor could it on this record, which reflects no unfairness and no injustice of any kind. One is entitled to a fair, not a perfect trial, and the record establishes that the trial in this case was eminently fair. Counsel for Fonar quoted the precise language of clause (f) during his examination of Dr. Lufkin. The jury had a copy of the '832 patent, including the language of clause (f), on hand in the jury room during its deliberations. In his instructions, Judge Keeton directly and exactly quoted clause (f) shortly after he gave the version Fonar attacks. Finally, instructions must be examined as a whole. *Orthokinetics*, 806 F.2d at 1582, 1 USPQ2d

---

1. Fonar did not move for judgment notwithstanding the jury's verdict that claims 7, 8 and 10 were invalid and not infringed. The merits

of the judgment entered on that verdict by the district court are therefore not before us.

at 1093; *Charles A. Wright, Inc. v. F.D. Rich Co.,* 354 F.2d 710, 713–14 (1st Cir.), *cert. denied,* 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673 (1966). . Examined as a whole in light of Fonar's attack on clause (f), the instructions here clearly pass muster. We discern no prejudice whatever to Fonar's substantial rights and no abuse of discretion in Judge Keeton's instructions.

### III. *Denial of J & J's Motion for JNOV on Validity and Enforceability of Claims 1 and 2*

There being no infringement by J & J of any asserted claim, there remains no case or controversy between the parties. We need not pass on the validity or enforceability of claims 1 and 2.[2] Thus we need not decide whether the district court erred in denying J & J's motion for JNOV on validity and enforceability. *See Jervis B. Webb Co. v. Southern Sys., Inc.,* 742 F.2d 1388, 1398–99, 222 USPQ 943, 948–49 (Fed.Cir. 1984); *Teledyne McCormick Selph v. United States,* 558 F.2d 1000, 1001, 214 Ct.Cl. 672, 195 USPQ 261, 262 (1977) ("[W]e think it proper not to render a determination of validity that is immaterial to our disposition of this case [on the basis of noninfringement]."); *Patent Scaffolding Co. v. Up-Right, Inc.,* 194 F.2d 457, 93 USPQ 80 (9th Cir.), *cert. denied,* 343 U.S. 958, 72 S.Ct. 1053, 96 L.Ed. 1357 (1952) (alleged infringer lacked standing to appeal denial of JNOV on validity where district court had granted JNOV of noninfringement and patentee had not appealed the latter judgment); *cf. Altvater v. Freeman,* 319 U.S. 359, 363–65, 63 S.Ct. 1115, 1117–18, 87 L.Ed. 1450, 57 USPQ 285, 288 (1943) ("To hold a patent valid if it is not infringed is to decide a hypothetical case," but a counterclaim for invalidity is not mooted where counterclaim deals with additional patent claims and devices not involved in the complaint and with license issues.).

Accordingly, we dismiss Appeal No. 86–1019 as moot.

CONCLUSION

The district court's judgment that claims 1 and 2 are not infringed is affirmed. Fonar's request that this court order a new trial is denied. The judgment that J & J has not proven claims 1 and 2 invalid or unenforceable is vacated and the appeal from that judgment is dismissed as moot.

AFFIRMED IN PART, VACATED IN PART.

---

**2.** The record contains no assertion that J & J infringes the '832 patent by any methods other than those found not to infringe, or that J & J's machines infringe the nonasserted apparatus claims. J & J's counterclaim merely repeated the affirmative defenses of invalidity and unenforceability and the verdict form, with no objection by J & J, dealt only with the asserted claims. J & J's motion for JNOV dealt only with claims 1 and 2.