**MARSH–McBIRNEY, INC.,**
**Plaintiff–Appellee,**

v.

**MONTEDORO–WHITNEY CORPORA-**
**TION, Defendant–Appellant.**

Nos. 88–1318, 88–1344, 88–1421,
88–1450 and 88–1598.

United States Court of Appeals,
Federal Circuit.

Aug. 7, 1989.

Suggestion for Rehearing In Banc
Declined Sept. 25, 1989.

J. Alan Galbraith, Williams & Connolly, Washington, D.C., argued for plaintiff-appellee.

Thomas J. Scott, Pennie & Edmonds, Washington, D.C., argued for defendant-appellant. With him on the brief was Joseph V. Colaianni. Also on the brief was Frank Frisenda, Jr., Frisenda, Morris & Nicholson, Los Angeles, Cal., of counsel.

Before FRIEDMAN, MAYER and MICHEL, Circuit Judges.

## OPINION

MAYER, Circuit Judge.

Marsh–McBirney, Inc. sued Montedoro–Whitney Corporation for infringement of its U.S. Patent No. 4,083,246, for a flow rate meter. The United States District Court for the Central District of California, No. 86–3022, found that Montedoro–Whitney devices with electromagnetic probes were infringing but devices equipped with acoustic probes were not. The court issued a permanent injunction against Montedoro–Whitney prohibiting production of the infringing devices and awarded Marsh–McBirney $1.8 million in damages. We dismiss Montedoro–Whitney's appeals of the infringement findings, Nos. 88–1318 and 88–1344, and affirm the judgment in No. 88–1421 on damages and the injunction; we reverse the judgment of noninfringement by devices with acoustic probes in No. 88–1450, and remand for determination of damages and injunctive relief against the devices with acoustic probes.

### Background

The '246 patent discloses a flow rate meter for measuring the flow of fluid in a partially filled conduit, channel or similar passage. Its most pertinent application is measuring the flow of water in sewers. Specifically, claim 1 of the patent reads:

1. Apparatus for measuring the flow of fluid in a conduit, channel or the like, comprising

(a) means mounted in the conduit for producing an average fluid velocity signal, including

(1) a probe;

(2) means for mounting said probe between the low water mark and the bottom of said conduit, whereby said probe produces a local velocity signal; and

(3) means for modifying said local velocity signal to produce said average velocity signal;

(b) means for producing a fluid height signal corresponding to the height of the fluid in the conduit;

(c) transfer function means for converting the fluid height signal to a fluid area signal;

(d) means for multiplying the average fluid velocity signal with the fluid area signal to produce a fluid flow rate signal; and

(e) indicator means connected with the output of said multiplier means for producing an indication of the magnitude of said fluid flow rate signal.

Claim 2 claims the "[a]pparatus as defined in claim 1, wherein said probe comprises an electromagnetic probe of velocity sensing means."

Before the '246 patent, most of the art focused on the "magic point," where the average velocity could be determined directly. If the fluid level fell below the magic point, the flow meter would not work. Devices above the low water mark were also susceptible to clogging in sewer environments. Other prior art devices avoided the measurement of average velocity altogether. The '246 patent covered the first invention to disclose a means of mounting a probe at the low water mark to measure local velocity and then modifying it to achieve an average velocity signal.

The devices of Montedoro–Whitney that are the subjects of this suit are the WDFM–7 and WDFM–8 models. The WDFM–7 is a stand-alone flow meter which measures certain parameters in a conduit

or channel and provides the measurements to a microprocessor programmed to make flow calculations. The WDFM–8 is a data collection device which records the measurement data that is provided to a general purpose computer capable of doing flow calculations.

In addition to meters with electromagnetic probes like Marsh–McBirney's, Montedoro–Whitney also produces flow meters equipped with bi-directional acoustic probes. Both types of probes are mounted at the low water mark and determine local velocity.

In finding infringement, the district court first rejected Marsh–McBirney's claim of literal infringement because element (a)(3) of claim 1 requires the production of an average velocity signal and neither WDFM–7 nor WDFM–8 devices separately produce an average velocity signal. Still, the district court found that the Montedoro–Whitney devices merely resequenced the fluid flow computations, and while average velocity was not expressly computed, it was still there. Accordingly, there was infringement under the doctrine of equivalents.

Turning to the acoustic probes, however, the court found that they had several non-dispositive advantages over the electromagnetic probes, including greater accuracy and resistance to fouling from grease and slime accumulation. It said that Montedoro–Whitney developed the first successful bi-directional acoustic probe, and that, in applying for the patent in 1976, Marsh chose the electromagnetic probe over the then available acoustic probes. The court therefore concluded that acoustic probes were not "probes" as recited in claim 1 and were not infringing.

On damages, the district court held that Montedoro–Whitney and Marsh–McBirney were the only competitors in a domestic niche of the market because theirs were the only devices to measure velocity at the low water mark and consequently were far more accurate than devices of other competitors. Therefore it computed damages by a "lost profits" analysis.

In this court, the parties present a panoply of procedural and substantive matters. Each side contends the other's appeal on liability is untimely. Montedoro–Whitney appeals the findings of infringement by devices with electromagnetic probes, the computation of damages, and the propriety of the injunction. Marsh–McBirney cross-appeals on the finding of noninfringement by Montedoro–Whitney's devices with acoustic probes.

On March 22, 1988, Montedoro–Whitney appealed ostensibly under 28 U.S.C. § 1292(c)(2) (1982) from the district court's March 10, 11 and 16 oral findings of fact and conclusions of law addressed to infringement by Montedoro–Whitney's WDFM–7 and WDFM–8 sensors equipped with electromagnetic probes. Montedoro–Whitney filed a second appeal on April 7 appealing further oral findings and conclusions announced on March 24, 29 and 30. The parties focus their arguments on the March 16 findings; for the sake of clarity, we do, too. But our analysis applies equally to the other findings addressed in the March 22 and April 7 appeals, Nos. 88–1318 and 88–1344. Montedoro–Whitney also filed another appeal limited to damages, No. 88–1421, on May 18, 1988, after the court entered final judgment on April 25. Marsh–McBirney did not cross appeal the finding of noninfringement of devices with acoustic probes until May 24, 1988, No. 88–1450, after the final judgment.

In separate motions and in their appeals, the parties strive mightily to exclude each other's appeals for untimeliness. Montedoro–Whitney argues that section 1292(c)(2) permits it to appeal from a judgment or order of infringement that is final except for an accounting, and the March 16, 1988, oral opinion was such an order. Because Marsh–McBirney did not file a cross-appeal within fourteen days of Montedoro–Whitney's appeal or within thirty days of the March 16 findings, Montedoro–Whitney maintains that the May 24 cross-appeal is untimely. Marsh–McBirney counters that the March 16 finding was not appealable under section 1292(c)(2), and because Montedoro–Whitney limited its appeal of May 18, 1988, to damages, its earlier premature

appeals on liability are now lost. We agree with Marsh–McBirney and that leaves only Montedoro–Whitney's appeal of damages and the injunction, and Marsh–McBirney's cross-appeal of noninfringement by the acoustic probes before us.

### Discussion

### A. Timeliness of the Appeals

■ We look first to our jurisdiction. Times for appeal are jurisdictional and cannot be waived. *Browder v. Director, Ill. Dep't of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978); *see also Tylo Suana, S.A. v. Amerec Corp.*, 826 F.2d 7, 9, 3 USPQ2d 1792, 1793 (Fed. Cir.1987).

■ Section 1292(c)(2) provides: "The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction ... of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting." In determining whether a judgment is "final except for an accounting," the key is the "binding effect in disposing of the [patent infringement] question." *McCullough v. Kammerer Corp.*, 331 U.S. 96, 99, 67 S.Ct. 1165, 1167, 91 L.Ed. 1365, 73 USPQ 136, 138 (1947). Section 1292(c)(2) still requires a judgment, not just the announcement of findings of fact and conclusions of law. *Cf. H.A. Jones Co. v. KSM Fastening Sys.*, 745 F.2d 630, 631, 223 USPQ 689, 689 (Fed.Cir.1984). Rule 54(a) of the Federal Rules of Civil Procedure describes a judgment as "a decree or any order from which an appeal lies."

■ A judgment is not appealable within the meaning of Federal Rule of Appellate Procedure 4(a)(6) unless it is entered in compliance with Rules 58 and 79(a) of the Rules of Civil Procedure. Rule 58 requires that "[e]very judgment shall be set forth on a separate document." Absent waiver, there is no judgment without a separate document. *United States v. Indrelunas*, 411 U.S. 216, 220, 93 S.Ct. 1562, 1564, 36 L.Ed.2d 202 (1973); *Bandag, Inc. v. Al Bolser Tire Stores, Inc.*, 719 F.2d 392,

393, 219 USPQ 1049 (Fed.Cir.1983). The purpose of this rule is to save litigants from losing the opportunity to appeal because they failed to recognize which docket entry constituted the entry of a final judgment. *Indrelunas*, 411 U.S. at 220, 93 S.Ct. at 1564. In our case, no separate document was ever issued for the March 16 findings. Indeed, the district court warned during the trial that an appeal would be premature. We have precisely the case that Rule 58 was designed to obviate.

Rule 79(a) requires that "orders, verdicts, and judgments shall be entered chronologically in the civil docket.... These entries shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process." The docket entry must dispose of the issues and state a final declaration of the result. *See Rappaport v. United States*, 557 F.2d 605, 606 (7th Cir.1977).

■ Montedoro–Whitney relies on a minute order of March 16, 1988 (docket entry 133) to support its argument that a final judgment was entered. This minute order merely stated, "Crt makes its findings of fact & conclus of law." A reading of the entry does not disclose what the finding on infringement was, nor does it show that a separate document was mailed to the parties or that judgment was entered.

By contrast, the docket entry detailing the April 25 final judgment (docket entry 157) said, "Jgmt be ent in favor of Marsh–McBirney ... in total amt of $1,797,-456.... (Ent 4–25–88) Mld cpys & notcs to ptys." It leaves no doubt about the substance of the judgment and that a separate document was prepared and mailed to the parties. The failure of the March 16 minute order to do likewise leads to only one conclusion—no judgment was entered or intended.

The final judgment itself confirms this by reciting, "That all findings of fact and conclusions of law previously announced by the Court are hereby made final findings of facts and conclusions of law [ ]." That of

course means they were not final before. The court's procedure is not objectionable, either. In fact, we have recommended "that a district court should refrain from entering an appealable order until the findings of facts and conclusions of law *upon which the district court intends the losing party to base any appeal* also are entered." *Hybritech Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1450, 7 USPQ2d 1191, 1195 (Fed.Cir.1988).

The court did not intend the intermittent findings and conclusions it made on March 10, 11, 16, 24, 29 and 30 to be the basis of appeal until they were entered on April 25 and it made this emphatically clear to Montedoro–Whitney. The court made the oral finding of infringement for the convenience of the participants in the trial. But it denied a motion by Montedoro–Whitney to bifurcate the trial into liability and damages phases, *see* Fed.R.Civ.P. 42(b), in which Montedoro–Whitney's express reason for asking for bifurcation was to allow it to appeal on liability. Even as Montedoro–Whitney was readying its first appeal, it was fully aware that the court had not reached all the liability issues. That did not occur until March 29 after the district court ruled on patent misuse, but the court entered no judgment then either.

From our perspective, the district court chose the most expeditious means for trying this case. After taking the evidence on liability, the court announced its intention to go immediately into remedy, finished hearing all evidence by March 30, and issued a final judgment only three weeks later on April 25. Section 1292(c)(2) is not available for the misuse to which it was put in this case, whereby Montedoro–Whitney appealed tentative announcements of the trial court as they were made. The court, not the litigants, controls the proceedings and decides when judgments are to issue. It is unreasonable to suppose that a party is free to appeal every utterance of the trial court under the guise of section 1292(c)(2), which is, after all, a limited exception to the normal rule that appeals must await final judgment on the whole case.

If its appeals were premature, as they were, Montedoro–Whitney argues that Fed.R.App.P. 4(a)(2) saves them. We disagree. That rule says, "Except as provided in (a)(4) of this Rule 4, a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof." The rule, however, applies only to a decision that will be final upon its entry. *See* 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 204.14, at 4–128 (3d ed. 1989). It will not rescue a premature appeal that is filed before the announcement of a final decision. *See United States v. Hansen,* 795 F.2d 35, 37 (7th Cir.1986); *General Television Arts, Inc. v. Southern Ry. Co.,* 725 F.2d 1327, 1331 (11th Cir.1984).

Montedoro–Whitney filed its notice of appeal after the March 16 findings and conclusions were announced and noted in the civil docket, but that did not complete the liability inquiry. Inducement to infringe and contributory infringement, and patent misuse remained outstanding and were not resolved until March 24 and 29, respectively. The court also left the record open for receipt of supplemental findings or revisions until final judgment. *See* Fed.R. Civ.P. 54(b). There was no announcement of a decision or order in this case except by the entry of the final judgment on April 25; entry of judgment was the "announcement" of the decision.

Montedoro–Whitney has only itself to blame for its failure to lodge a timely appeal. The district court warned that the appeal was premature and sanctionable as vexatious conduct. Yet, Montedoro–Whitney persisted in its view even after final judgment. It had a vehicle for all issues in its appeal of May 18, 1988, of course. But it has insisted that appeal covers only damages because that is the predicate for one of its major arguments: that Marsh–McBirney's appeal is untimely and we cannot reach it. We accept the case as it was presented and conclude that Montedoro–Whitney's appeals on liability are untimely and we are without jurisdiction to hear them.

### B. The Acoustic Probes

■ The first step in determining infringement is properly construing the claims.* *See United States v. Telectronics,* 857 F.2d 778, 781, 8 USPQ2d 1217, 1219 (Fed.Cir.1988); *Moeller v. Ionetics, Inc.,* 794 F.2d 653, 656, 229 USPQ 992, 994 (Fed. Cir.1986). Claim construction is a matter of law; however, interpretation of the claim may depend on evidentiary material about which there is a factual dispute. *See LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n,* 867 F.2d 1572, 1574, 9 USPQ2d 1995, 1997 (Fed.Cir.1989).

■ Element (a)(1) of claim 1 of the patent is "a probe." Claim 2 is for an "[a]pparatus as defined in claim 1, wherein said probe comprises an electromagnetic probe of velocity sensing means." Reading the claim 2 requirement that probes be electromagnetic into claim 1 violates the principle that "narrow claim limitations cannot be read into broad [claims] whether to avoid invalidity or to escape infringement." *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1054, 5 USPQ2d 1434, 1441 (Fed.Cir.1988).

■ Montedoro–Whitney, however, maintains that claim 1 is properly limited to electromagnetic probes by the discussion of electromagnetic probes in the specification. To the extent it refers us to the specification in construing the claims, Montedoro–Whitney is on sound ground. *See Data Line Corp. v. Micro Technologies, Inc.,* 813 F.2d 1196, 1201, 1 USPQ2d 2052, 2055 (Fed.Cir.1987); *Radio Steel & Mfg. Co. v. MTD Prod., Inc.,* 731 F.2d 840, 848, 221 USPQ 657, 663 (Fed.Cir.1984). Its reading of the specification, however, is incorrect.

The specification does discuss the interaction between the electromagnetic probe and the rest of the device, but it also allows for use of other probes. In explaining different configurations of this invention,

the specification states: "the average velocity of Fig. 6 is obtained by placement of the electromagnetic sensor (*or any velocity sensor*) at such a position that it always measures average velocity." Col. 3, 11. 57–60 (emphasis added). In Fig. 7, the inventor's probe shown at the low water mark is described as a "velocity sensor." Col. 3, 11. 62–65. The purpose of both the electromagnetic and acoustic probes is to sense velocity.

Montedoro–Whitney's acoustic probes are mounted at the low water mark and obtain the local velocity signal. They were first developed as retrofits for electromagnetic probes. The acoustic probes do have the advantages of greater accuracy, lower power design, less foulability, and increased safety as the district court observed; but simply because Montedoro–Whitney refined the acoustic probe to make it work better in a sewer environment does not mean it avoids claim 1. Advances subsequent to the patent may still infringe. *See Atlas Powder Co. v. E.I. DuPont De Nemours & Co.,* 750 F.2d 1569, 1581, 224 USPQ 409, 417 (Fed.Cir.1984). The district court said that the Montedoro–Whitney acoustic probe's capability for bi-directional flow measurement was significant to its finding of noninfringement because this was an advance over earlier acoustic probes. This is irrelevant, however, because whether the velocity sensors are electromagnetic or acoustic, bi-directional or not, they are "probes" encompassed by element (a)(1).

At the time of the invention, acoustic probes were part of the prior art. Marsh was aware of them, and testified that he chose to use the electromagnetic probe because it best served his needs. But that is not to say that he excluded acoustic probes from his patent. Montedoro–Whitney points to no evidence that Marsh limited his claim to electromagnetic probes, and the

---

* Because Montedoro–Whitney's appeal on infringement was premature and is not before us, it may not contest the district court's finding that element (a)(3) of claim 1 is present in its devices under the doctrine of equivalents, and is limited to supporting the district court's conclusion that the acoustic probes were not "probes" as claimed by element (a)(1). *See United States v. New York Tel. Co.,* 434 U.S. 159, 166 n. 8, 98 S.Ct. 364, 369 n. 8, 54 L.Ed.2d 376 (1977) (without cross-appealing, the prevailing party may defend the judgment on any ground which would not expand the relief it has been granted).

district court did not find otherwise, notwithstanding its apparent misapprehension that Marsh's preference for the electromagnetic limits the scope of the invention to that mode.

## C. Damages

The district court awarded Marsh–McBirney damages for lost profits, finding that the parties operate in a unique sector of the domestic market insofar as the infringing devices are concerned. To recover lost profits, the patent owner must show there was a reasonable probability that, but for the infringement, it would have made the sales made by the infringer. *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326, 5 USPQ2d 1255, 1260 (Fed.Cir.1987). "The patent holder does not need to negate *all* possibilities that a purchaser might have bought a different product or might have foregone the purchase altogether." *Paper Converting Mach. Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 21, 223 USPQ 591, 598 (Fed. Cir.1984). But when the contesting parties are the only suppliers of the product, it is not inappropriate to infer that the patentee would have had the sales made by the infringers. *Del Mar*, 836 F.2d at 1327, 5 USPQ2d at 1260.

The district court found that Marsh–McBirney and Montedoro–Whitney devices occupied a separate niche because they were the only ones that measured velocity by a probe positioned at the bottom of the conduit. With this technique, the devices were significantly more accurate than the flow meters of other competitors. Montedoro–Whitney gives us no basis to question the district court's identification of this niche or its finding that producers outside the niche could not compete with it. *See Yarway Corp. v. Eur–Control USA, Inc.*, 775 F.2d 268, 276, 227 USPQ 352, 357 (Fed.Cir.1985).

## Conclusion

The judgment of the district court in No. 88–1421 is affirmed insofar as it awards damages and injunctive relief for infringement of the Marsh patent by WDFM–7 and WDFM–8 devices with electromagnetic probes; the judgment in No. 88–1450 is reversed insofar as it finds no infringement by the WDFM–7 and WDFM–8 devices with acoustic probes; and the case is remanded for reconsideration of damages and the injunction in accordance with this opinion. The appeals in Nos. 88–1318 and 88–1344 are dismissed.

## COSTS

Montedoro–Whitney will bear the costs of these appeals.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.