**ROLL SYSTEMS, INC., Plaintiff,**

v.

**WALLACE COMPUTER SERVICES, INC., Defendant.**

**No. 94–10372–MEL.**

United States District Court, District of Massachusetts.

Aug. 1, 1995.

David R. Zipps, John C. Englander, Paul F. Ware, Goodwin, Procter & Hoar, Boston, MA, for plaintiff.

Stephen S. Young, Sherburne, Powers & Needham, Boston, MA, for defendant.

LASKER, District Judge.

Roll Systems and Wallace Computer are competing manufacturers of machines that fold, stack and move business forms. Roll is the owner of United States Patent Number 5,273,516 (" '516") for a machine which performs this service, and Wallace also produces a form-stacking system. Roll Systems asserts that its patent is infringed by Wallace's device. Wallace denies infringement, and moves for summary judgment on that issue. Roll cross-moves for summary judgment of infringement.

I

Roll's '516 patent was issued on December 28, 1993.[1] It describes an invention which gathers business forms as they roll out of a folding machine (a "folder") onto a conveyor belt, which then pivots the forms so that they are stacked vertically, and mechanically transfers the stack to a wheeled cart.

The stacking process is simple: Folded paper forms spill out of the folder in a continuous strip onto a conveyor belt which feeds them onto an adjacent table top, where they collect in a horizontal stack. Once a pile of forms has accumulated, the table is pivoted to a vertical position. A "retractable backing surface," perpendicular to the table top, supports the stack of paper as the table is pivoted. A wheeled cart is manually rolled into position next to the pivoted table, and the backing surface which supports the stack is, as the patent asserts, "retracted" to transfer the stack to the cart.

The '516 patent includes a specification illustrated in patent figures 1 and 3 below. In that embodiment, a sliding door at the end of the table closest to the folder (46) may be lowered below the table's surface—in order to allow the folded paper to pass onto the table top, as shown in figure 1, or it may be raised to support the stack as the table is pivoted, as shown in figure 3. When the table is pivoted to a vertical position, a wheeled cart is brought underneath it. The sliding door is then pulled out from under the stack, which is transferred to the cart.

Wallace markets a similar system, sold for the same purpose. Wallace's system includes a tilting table, which it calls the "PFT", and a wheeled cart, called the "PST". The Wallace system, however, does not include a sliding door to support or transfer the stack of folded forms. Instead, a removable, U-shaped tine assembly is attached to the table top just before the loaded table is pivoted to support the stack as it is tilted vertically. Once the table is pivoted, the stack is transferred by passing the tines which support it through cut-out slots in the base of the PST cart. As the tines pass through the slots, the stack is rested on the base of the cart. The tines, still attached to the pivoted table top, are then drawn away from the cart which holds the stack.

As both parties recognize, infringement depends on the definition and scope of the term "retractable" as it is used in Roll's

1. In March, 1995, Roll Systems was issued a separate "method" patent on the same system, United States Patent No. 5,399,143. Thereafter, Roll amended its complaint to include allegations that Wallace's system infringes the '143 patent as well as the '516 patent. Summary judgment motions as to the validity and infringement of the '143 patent are pending.

patents. Wallace contends that its system contains no "retractable backing surface" as that term is used in Roll's patent claims. Roll contends that as the tines pass through the slots in Wallace's PST, they retract, and that, therefore, Wallace's system infringes the Roll patents.

Patent '516 contains five independent claims: Claims 1, 20, 21, 27 and 34. Wallace moves for summary judgment, contending that its product infringes none of the claims contained in patent '516. Roll Systems cross-moves for summary judgment of infringement with respect to Claims 1 and 21 only.

## II

A determination of whether a patent is infringed is a two-step process. First, the language of the claim must be interpreted to determine its scope and meaning. Second, the accused device must be compared to the properly interpreted claim. *Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1053 (Fed.Cir. 1994). An accused device which contains all of the limitations of a claim infringes that claim. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821 (Fed.Cir.1992).

### A. *"Retraction" within Claim 1 of Patent '516*

Claim 1, the patent's broadest claim, describes "a system for substantially vertically stacking continuous folded material." In addition to the tiltable table and wheeled cart, claim 1 requires:

**2.** In its entirety, Claim 1 reads:

> A system for substantially vertically stacking continuous folded material comprising:
> a folder for folding the material along fold lines,
> > a conveyor having a conveyor surface, said conveyor being positioned adjacent said folder so that the folded material from said folder is received on and moved along said conveyor in a downstream direction,
> a table having a table top support surface,
> a support bracket that supports the
> > table top support surface adjacent and in line with to [sic] the conveyor surface and in a position for receiving a horizontal stack of folded from [sic] the conveyor,
> said support bracket including a pivot

at least one retractable backing surface substantially transverse to a plane defined by the table top that supports a bottom of the stack when the table is pivoted to a substantially vertical position,

and a cart movable to a position adjacent said tilted table for receiving from said table said vertical stack, wherein the retractable backing surface is retracted to allow the vertical stack located thereon to be received from said table.[2]

U.S. Patent No. 5,273,516 at column 6, lines 24–32. Wallace asserts that the word "retractable" requires a backing surface that can be drawn *into the table top*. Roll Systems urges that the claim is not so limited, and requires only a backing surface that both supports the bottom of the vertical stack and withdraws to transfer the paper to the cart. Nothing in claim 1, Roll argues, states or implies that the retractable backing surface described there must retract into the table.

Wallace defends its narrow interpretation in several ways, contending that claim 1's "retractable" language is narrowed by the specification, the patent's other claims, and the prosecution history of the '516 patent, to require retraction into the table top. Specifically, Wallace points out that (1) the patent's specification and commercial embodiment contain a sliding door which retracts into the table to transfer the paper stack to the wheeled cart, (2) three other independent claims of the patent, claims 21, 27 and 34, require a retractable backing surface which, in a retracted position, allows the paper forms to pass from the conveyor to the table

> mechanism positioned along the table top and having a pivot axis substantially transverse to the downstream direction so that said table pivots from a substantially horizontal position to a substantially vertical position to likewise move the stack from a horizontal to a vertical stack position,
> at least one retractable backing
> > surface substantially transverse to a plane defined by the table top that supports a bottom of the stack when the table is pivoted to a substantially vertical position,
> and a cart movable to a position
> > adjacent said tilted table for receiving from said table said vertical stack, wherein the retractable backing surface is retracted to allow the vertical stack located thereon to be received from said table.

top free of obstruction (suggesting retraction into the table), (3) Roll's original patent application included a specification that described a sliding door, and (4) Roll's original patent claims, which did not require a retractable backing at all, were rejected as unpatentable.

From these facts, which are undisputed, Wallace concludes that the retractable backing surface in claim 1 must be interpreted to require a backing that draws into the table, like the one contained in Roll's specification and commercial embodiment.

■ The Federal Circuit has made it clear that the words of a claim are to be given their ordinary meaning unless it appears that the inventor used them differently. *Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948, 951 (Fed.Cir.1993). Webster's New World Dictionary (3rd ed. 1988) defines "retract" as "to draw back or in," or "to withdraw or disavow." The word "retract," then, is not ordinarily limited to mean "draw in." Wallace argues, however, that the term has been restricted to this definition by Roll's intent, as evidenced elsewhere in the '516 patent and its prosecution history.

■ When the meaning of a word contained in a patent claim is disputed, specification and prosecution history can provide relevant information about the scope and meaning of the claim. *Read*, 970 F.2d at 823. Wallace correctly notes that "[t]hough inventors may be their own lexicographers, they must use words in the same way in the claims and in the specification." *Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627, 632 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 751, 98 L.Ed.2d 764 (1988). But this tenet of patent interpretation must be considered alongside another important principle of claim construction: "that interpreting what is *meant* by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'" *Intervet America, Inc. v. Kee-Vet Laboratories, Inc.*, 887 F.2d 1050,

1053 (Fed.Cir.1989) (quoting *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed.Cir.), *cert. denied*, 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988)) (emphasis in original).[3] Wallace has failed to heed the *Intervet* Court's warning— it confuses precisely these ideas. *Fonar* provides a good illustration of the proper use of a specification in interpreting the language of a patent claim. In that case, the patent at issue described an imaging system which used nuclear magnetic resonance to detect cancerous cells. One claim limitation required a comparison of "the values obtained in [step] (b) against the standards obtained in [step] (a)." The plaintiff contended that, within the meaning of its patent claims, the term "standard" was broad enough to signify a "baseline" of "images" stored in a doctor's memory. The Court disagreed, holding that because the specification used "standard" only to refer to numerical data, it contained no evidence supporting the plaintiff's "images" theory. Put another way, the specification implied a meaning *other than* the one urged by the plaintiff. Here, in contrast, Roll's specification supports its contention that "retractable backing surface" is one that can be withdrawn from the stack to transfer it. The device described by the specification, a sliding door, is one mechanism by which this transfer may be accomplished. The fact that the sliding door retracts into the table does not imply, however, that other forms of retractable backings are not contemplated by the inventor. *See Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed.Cir.1988) ("Where a specification does not *require* a limitation, that limitation should not be read from the specification into the claims." (emphasis in original)). In *Specialty Composites*, the defendant contended that the term "plasticizer," as it was used in plaintiff's patent, referred only to "external" plasticizers. Its evidence was the fact that the specification provided three examples of plasticizers, all external. The Court rejected this limited definition, noting that "what is patented is

---

**3.** The Federal Circuit has recently reconfirmed this principle in *Electro Medical Systems*, 34 F.3d 1048, 1054 (Fed.Cir.1994) (patent claims are not to be interpreted by adding limitations appearing only in a specification—although specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in specification will not be read into claims when claim language is broader than such embodiments).

not restricted to the examples, but is defined by the words in the claims.... The emphasis is on the suitability of any plasticizer that will achieve the specified properties, not on the particular class of plasticizer." *Id.* at 987. Here, Wallace attempts to narrow claim 1 in exactly the way *Specialty Composites* forbids: Wallace contends that because the "retractable backing surface" described in Roll's specification also retracts into the table top, each claim of the patent requires a backing that retracts into the table. In fact, claim 1 requires only a retractable backing surface, transverse to the table top, which can be retracted "to allow the vertical stack thereon to be received from the table." The sliding door, like the external plasticizer, is merely one way of satisfying a requirement that could perhaps be performed in various ways.

Wallace's argument with respect to other, more limited claims of the patent is unpersuasive for the same reason. For example, independent claim 27 requires two backing surfaces, one at the "downstreammost" end of the tilting table, and:

> a second backing surface positioned at an upstreammost end of the table, the second backing surface extending substantially transversely to the table surface and being movable between an extended position and a retracted position, the second backing surface being constructed an arranged so that, in a retracted position, the folded [paper] web passes thereover from the conveyor free of obstruction by the second backing surface, the second backing surface being constructed and arranged to support the folded web in a vertical stack, with the second backing surface positioned at a bottom of the stack when the table is pivoted to a substantially vertical position; and
>
> a cart having a base and a vertical wall, the cart further including wheels so that it is portable, the base being located at a height from the ground that is approximately equal to the height from the ground of the second backing surface when the table is pivoted to a substantially vertical position

so that the stacks supported thereby can be moved from the backing surface to the cart by positioning the cart base beneath the backing surface and moving the backing surface to a retracted position wherein the stack drops onto the cart base and supported thereby [sic].

U.S. Patent No. 5,273,516 at column 8, lines 50–68 and column 9, lines 1–7. Wallace contends that, in light of claim 27 and two other independent claims like it,[4] the "retractable backing surface" required by claim 1 must be interpreted as one that withdraws into the table top. Again, Wallace mistakes an improper construction for a proper one: The fact that claim 27 requires a backing surface which, in a "retracted" position, allows the paper forms to pass over the backing surface does not suggest that the word retracted, standing alone, implies such an arrangement. Rather, the claim includes an *additional limitation*—that the backing may be drawn beneath the flow of moving paper forms. However, this limitation does not appear in, and is not required by, claim 1.

Nor does the prosecution history of the '516 patent support Wallace's interpretation of claim 1. Although prosecution history may limit claims to exclude any interpretation disavowed during prosecution, Roll's original patent application did not include the word "retractable" at all. Therefore, there was no discussion during prosecution as to the meaning of the word, and no meanings were disclaimed by Roll Systems. Accordingly, the prosecution history of the '516 patent is not evidence that Roll intended to use the word in the limited sense urged by Wallace.

The specification, as originally submitted, does describe a sliding door. However, as set forth above, elements of a specification are not to be interpreted as claim requirements. Moreover, even if a sliding door was required by the original claims, to read this limitation into claim 1 would be to ignore what the *Intervet* Court calls "the impropriety of injecting into claims limitations from the prosecution history. Ambiguity, undue breadth, vagueness, and triviality are mat-

---

4. Claims 21 and 34 also require backing surfaces, in a retracted position, allow the paper to pass from the conveyor to the table free of obstruction.

ters which go to claim *validity* ... not to interpretation or construction." *Id.*

Furthermore, while it is true that Roll's claims were not deemed patentable until they were amended to require a retractable backing surface, this fact does not suggest that the backing surface required must withdraw into the tilting table. The original claims required no transfer mechanism at all. An examination of the prosecution history reveals that the patent office examiner amended claim 1 in the following way (examiner's omissions shown with a line through them, additions in italics):

> at least one *retractable* backing surface substantially transverse to a plane defined by the table top that supports a bottom of the stack when the table is pivoted to a substantially vertical position,
>
> and a cart movable to a position adjacent said tilted table for receiving from said table said vertical stack ~~for support of said vertical stack on said cart~~ *wherein the retractable backing surface is retracted to allow the vertical stack located thereon to be received from said table.*

Wallace's Exhibit B at 60. The unamended claim required no transfer mechanism whatsoever. The amendments merely limited the claim to describe a system which transfers the vertical stack by retracting the surface on which the stack rests. The examiner did not distinguish between retractable backings that retract into the table top and those which do not.

There is, therefore, a lack of evidence supporting Wallace's interpretation of claim 1. There are also several principles of construction which, when applied to the facts at hand, suggest that the term "retractable" must be broadly defined.

■ First, "narrow claim limitations cannot be read into broad [claims] whether to avoid invalidity or to escape infringement." *Marsh–McBirney, Inc. v. Montedoro–Whitney Corp.,* 882 F.2d 498, 504 (Fed.Cir.1989) [5] (quoting *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1054 (Fed.Cir.1988)).

Here, claims 4, 5 and 6, each of which is dependent upon claim 1, recite "sliding door" requirements:

> 4. A system as set forth in claim 1 wherein said table has a sliding door at one end thereof.
>
> 5. A system as set forth in claim 4 wherein said sliding door is disposed at an end of said table adjacent said conveyor.
>
> 6. A system as set forth in claim 5 wherein said sliding door has a first position in which it is disposed under said table top support surface and a second position in which it extends over the table top support surface for holding an end of a stack of folded material disposed on the table.

U.S. Patent No. 5,273,516 at column 6, lines 38–48.

These dependent claims describe the sliding door which Wallace contends is required by claim 1. Under *Marsh–McBirney,* however, Wallace proposes an impermissible inference: that these dependent claims require no more than the independent claim on which they rely. *See also Specialty Composites,* 845 F.2d at 987–88. (holding that the "plasticizer" required by the independent claims at issue did not refer solely to an external plasticizer: "[S]ince the dependent claims 8 and 16 add an external plasticizer as a limitation, the broader independent claims 1 and 11 do not have this limitation.").

Further evidence that claim 1 does not require a backing surface which withdraws into the table is found in the use of the word "retract" in dependent claims 30 and 31 of Roll's patent. Those claims require a "pivotable flap" which bridges the space between the conveyor belt and tiltable table to prevent forms from falling between the two as they are passed onto the table top. The claims describe a flap which is movable between two positions: an extended position (in which it bridges the gap) and a *retracted* position (in which it disengages from the tiltable table like a drawbridge and rises until it stands up at the end of the conveyor belt to prevent the folded forms from falling to the ground while the tiltable table trans-

5. The Court's opinion was vacated on other grounds in 1991. 498 U.S. 1061. Subsequently, however, the Federal Circuit reinstated the sections of the opinion relied upon here. *Marsh–McBirney, Inc. v. Montedoro–Whitney Corp.,* 939 F.2d 969 (Fed.Cir.1991).

fers a stack to the cart) (see the flap marked 50, figure 3). In this context, the word "retract" is used to mean "withdraw" or "draw back," rather than "withdraw into."

In sum, no evidence supports Wallace's theory that claim 1's "retractable backing surface" must withdraw into the table top. In the absence of proof that such a restricted meaning was intended, the ordinary meaning of "retract"—to draw back or in, or to withdraw—is assumed. *Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948 (Fed.Cir.1993). Claim 1, therefore, requires a backing surface transverse to the table top which supports the stack of paper and withdraws, or draws back or in, to transfer the stack to the cart.

## B. Infringement by Wallace's PFT/PST System

■ Wallace concedes that its PFT/PST system includes every element of claim 1 other than the "retractable backing surface" described in the claim's last two paragraphs. As noted above, claim 1 requires a retractable backing surface that is (1) "substantially transverse to a plane defined by the table top that supports a bottom of the stack when the table is pivoted to a substantially vertical position," and (2) "retracted to allow the vertical stack located thereon to be received" by the wheeled cart from the tilted table.

■ Wallace suggests several reasons why its PFT/PST system does not infringe claim 1. The first, that the word "retractable" requires retraction with respect to, or into, the table top, has already been rejected. Properly read, claim 1 does not use the word in so limited a manner.[6] Second, Wallace contends that its tines do not retract to transfer the stack of forms to the cart. Rather, Wallace asserts, the tines supporting the stack "pass downwardly through" the slots in the base of the wheeled cart, transferring the stack "like a fork lift truck."

Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, page 8. Roll counters that, in the ordinary sense of the word, Wallace's tines retract from the bottom of the cart to transfer the stack in exactly the way required by claim 1.

Although the parties devote considerable effort to a discussion of whether the withdrawal of the tines from the bottom of the stack is best called retraction, or whether that process is better described by another name, it is clear that retraction is one way of describing the process: One definition of "retract" is "draw back". That Wallace's tines "draw back" from the stack in order to transfer it to the cart is beyond question. Wallace's PFT/PST system, therefore, literally infringes claim 1 of Roll's '516 patent. Accordingly, Roll's patent is infringed.

Wallace's remaining arguments to the contrary are unpersuasive:

Wallace consistently notes that its device operates in a way distinct from Roll System's commercial embodiment. In determining the fact of infringement, however, the accused device must be compared to the claims of the patent at issue, not to the patentee's product. *Intervet*, 887 F.2d at 1055.

■ Wallace also contends that its tine-assembly system is superior to the "sliding door" device described by Roll's specification—and demonstrated in Roll's commercial embodiment—because the PFT table does not drop the stack from any height, and does not wrinkle the forms at the bottom of the stack. A device that improves upon a patented system, however, may still infringe it: In *Marsh–McBirney*, 882 F.2d 498, 504 (Fed. Cir.1989), the Federal Circuit observed:

> The district court said that the Montedoro–Whitney acoustic probe's capability for bi-directional flow measurement was significant to its finding of noninfringement because this was an advance over earlier

---

**6.** Roll argues that Wallace's device literally infringes claim 1 whether or not the claim requires retraction with respect to the table top (as opposed to retraction with respect to the stack, which is, in fact, the only retraction claim 1 requires). Roll contends that the removal of the tine assembly from the table top constitutes retraction with respect to the table. Although it is

unnecessary to reach it here, the argument is unpersuasive. Because "removable" is not an ordinary definition of the word retractable, Roll must come forward with some evidence that the patent contemplated such a meaning. *Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627, 632 (Fed.Cir.1987). Since Roll Systems furnishes no such evidence, its argument on this point fails.

acoustic probes. This is irrelevant, however, because whether the velocity sensors are electromagnetic or acoustic, bi-directional or not, they are "probes" encompassed by element (a)(1).

Here, whether or not Wallace's retractable tine assembly is an improvement over Roll's retractable door, it is a "retractable backing surface" within the meaning of Roll's claim 1.

Wallace's PFT/PST system contains each of the elements recited by claim one of Roll's patent '516. Wallace's device, therefore, literally infringes patent '516. *Intervet,* 887 F.2d at 1055. The remaining independent claims of the '516 patent, therefore, need not be reached. Roll's motion for summary judgment of infringement is granted; Wallace's motion is denied.

It is so ordered.

EXHIBIT