# United States Court of Appeals for the Federal Circuit

04-1202,-1222,-1251


COLLEGENET, INC.,

Plaintiff-Appellant,

v.


APPLYYOURSELF, INC.,

Defendant-Cross Appellant.


John D. Vandenberg, Klarquist Sparkman, LLP, of Portland, Oregon, argued for plaintiff-appellant. With him on the brief were Kristin L. Cleveland, Scott E. Davis and Michael N. Zachary.

J. Michael Jakes, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, argued for defendant-cross appellant. On the brief were Raymond C. Jones, Lawrence E. Carr III and Timothy R. Feely, Carr, Morris & Graeff, PC, of Washington, DC. Of counsel on the brief was Jeff E. Schwartz, Preston Gates Ellis & Rouvelas Meeds LLP, of Washington, DC. Of counsel was Kathleen C. Bricken, Garvey Schubert Barer, of Portland, Oregon.

Appealed from: United States District Court for the District of Oregon

Magistrate Judge Dennis J. Hubel

# United States Court of Appeals for the Federal Circuit

04-1202,-1222,-1251

COLLEGENET, INC.,

Plaintiff-Appellant,

v.

APPLYYOURSELF, INC.,

Defendant-Cross Appellant.

_____

DECIDED:  August 2, 2005

_____

Before LOURIE, RADER, and SCHALL, Circuit Judges.

RADER, Circuit Judge.

In the United States District Court for the District of Oregon, a jury found that ApplyYourself, Inc. (ApplyYourself) infringed claims 2-8, 13-17, and 22-31 of CollegeNet, Inc.'s (CollegeNet) U.S. Patent No. 6,345,278 (the '278 patent), and claims 1-39 and 41-44 of CollegeNet's U.S. Patent No. 6,460,042 (the '042 patent).  On a motion for judgment as a matter of law (JMOL), the district court granted ApplyYourself's motion for noninfringement of the '042 patent and alternative motion for a new trial.  CollegeNet, Inc. v. ApplyYourself, Inc., 2003 WL 23778092 (D. Or. Dec. 9, 2003).  Because the district court misconstrued the phrase "in a format specified by the institution" in the '042 patent, this court reverses the JMOL and reinstates the jury verdict of infringement.  This court also holds that the district court correctly dismissed without prejudice ApplyYourself's counterclaim and affirmative defenses that the

'042 patent was invalid.  In addition, this court holds the district court correctly construed the '278 patent's "automatic" limitation and correctly denied ApplyYourself's motion for a new trial on the claims relating to the '278 patent's "in a format specified by the institution" limitation.

**I.**

The '042 patent (issued Oct. 1, 2002) is a continuation of the '278 patent (issued Feb. 5, 2002).  Both patents share a common specification.  The patents are directed to an online service for reducing the amount of work required by applicants and institutions in, respectively, submitting and processing applications for admission.  In a common application of this online service, a college applicant could access a site and fill out an application to a particular university or institution.  The applicant's data would then remain available to complete applications for other universities and institutions.  The applicant could thus apply with greater ease to multiple institutions.  At the same time, the system would allow the institutions to access the applicant's submitted information online and, in addition, allow the institutions to request delivery of the information in a particular format, thereby reducing the amount of work required by the institution in processing the application.  As the '042 patent describes:

> A forms engine allows data sharing between customizable on-line forms, such as college admissions applications. Before applying, an applicant opens an account with a third party application servicer. After the applicant completes an application for one institution, the data is saved in a data base and <u>automatically</u> populates fields in subsequent application forms. The form for each institution is created from a form description file. Each form is branded for its institution and forms for different institutions differ in appearance and content so that the presence of the third party servicer is transparent to the applicant.

'042 patent, Abstract (emphasis added).

04-1202,-1222,-1251                          2

The '278 patent is specifically directed to the data-sharing-component of the invention, i.e., the component that transfers common information - such as applicant name and date of birth - to multiple applications. Independent claim 1 is representative:

1. A method of creating and processing over a computer network forms representing applications to different higher education institutions, comprising:

creating in response to a request from an applicant for an application to a first institution a first application form customized in accordance with the preferences of the first institution, the first application form including first form data fields for entering applicant information;

providing to the applicant over a computer network the first application form;
entering the applicant information in the first form data fields;
posting the applicant information entered into the first form data fields of the first application form to a server;

storing the posted applicant information in a database having a database field structure defined by multiple database fields, the database including multiple records, each record capable of storing information corresponding to each of the database fields;

creating in response to a request from the applicant for an application to a second institution a second application form customized in accordance with the preferences of the second institution, the second application form including second form data fields for entering applicant information, at least one of the second form data fields corresponding to applicant information not entered into the first form data fields;

automatically inserting into some of the second form data fields applicant information from the database;

providing to the applicant over a computer network the second application form;
entering applicant information into the second form data fields into which information was not inserted from the data storage or into which the data inserted from the data storage is to be changed;

posting the applicant information entered into the second form data fields to the server; and

<u>automatically</u> storing the applicant information entered into the second form data fields into the database by adding new records to the database, the automatic storing of the applicant information not altering the database field structure, thereby allowing new form data fields corresponding to applicant information not previously requested to be added to an application form without requiring alterations of existing application forms or of programs that access the database, whereby customized applications to different institutions share data through common, extensible data storage.

'278 patent at col. 22, l. 34-col. 23, l. 14 (emphasis added).

The '042 patent, in turn, is directed to the portion of the invention that reduces the burdens imposed on institutions in processing applications for admission. In particular, the '042 patent claims a method in which the institution receives the application "in a format specified by the institution." Independent claim 16 is representative:

16. A method of processing over a computer network forms directed by multiple public forms users to multiple institutions, the forms being processed by a third party forms servicer that is neither one of the multiple institutions nor one of the public forms users, the method comprising:

presenting to a form user over a computer network by a third party forms servicer a form directed to one of the multiple institutions, the forms including fields for the forms user to enter user information;

receiving by the third party forms servicer over the computer network user information and electronic payment information entered by the user;

processing by the third party forms servicer an electronic payment associated with the form, the processed payment being from the user to the one of the multiple institutions to which the form is directed;

providing by the third party forms servicer the user information to the institution to which the form is directed <u>in a format specified by the institution</u>, the third party forms servicer thereby providing to public form user customized forms identified with institution of higher education and providing to the institutions custom-formatted data, while relieving the institution of the administrative burden of processing forms and payments.

'042 patent, col. 36, ll. 32-57 (emphasis added).

04-1202,-1222,-1251                                    4

ApplyYourself offers online systems for processing application forms. Flagship was ApplyYourself's first online system. It includes a software component called "AIM" (ApplyYourself Information Manager) that offers a number of ways that an institution can specify a particular application format. ApplyYourself's second product, known as the i-Class system, delivers data to the institution in three general types of file formats -- fixed-width, delimited, and XML. Each format type offered many variations.

On April 12, 2002, CollegeNet filed suit against ApplyYourself for infringement of the '278 patent. On October 1, 2002, CollegeNet filed a separate suit for infringement of the '042 patent. The district court consolidated the two cases and assigned them to the Honorable Dennis J. Hubel, United States Magistrate Judge, for trial. The district court ultimately granted CollegeNet summary judgment of infringement as to claims 1, 9, 10 and 21 of the '278 patent, but denied summary judgment on the '042 patent. With respect to the '042 patent, the court determined that there were genuine issues of material fact as to whether the Flagship or i-Class systems satisfied the "in a format specified by the institution" limitation, which the court had previously construed to mean "any file and other formats specified by that institution."

The issue of infringement of all of the claims of the '042 patent and the remaining claims of the '278 patent therefore proceeded to trial. The jury found infringement of all claims except claims 18-20 of the '278 patent. However, the district court subsequently granted ApplyYourself's motion for JMOL of noninfringement of the '042 patent and, in the alternative, a new trial. The court found that no reasonable juror could find infringement of the "in a format specified by the institution" limitation.

This appeal followed.  In the main appeal, CollegeNet contends that the district court erred in granting ApplyYourself JMOL of non-infringement of the '042 patent and, in the alternative, a new trial.  CollegeNet principally argues that the district court erred in its construction of the "in a format specified by the institution" limitation.  CollegeNet also argues that the district court erred in allowing ApplyYourself to dismiss its affirmative defense and counterclaim of invalidity without prejudice.

ApplyYourself cross-appeals the district court's grant of summary judgment of infringement of claims 1, 9, 10 and 21 of the '278 patent.  ApplyYourself contends that the district court erred in its construction of "automatically," which is a limitation of all of the claims of the '278 patent.  This court addresses the parties' arguments in turn, starting with the issues raised in the main appeal.

## II.

This court reviews claim construction without deference.  Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc); Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).  This court reviews a motion for JMOL "under the law of the regional circuit where the appeal from the district court normally would lie."  Riverwood Int'l Corp. v. R.A. Jones & Co., 324 F.3d 1346, 1352 (Fed. Cir. 2003).  The United States Court of Appeals for the Ninth Circuit reviews a district court's order granting JMOL without deference.  See Vollrath Co. v. Sammi Corp., 9 F.3d 1455, 1460 (9th Cir. 1993).  Judgment as a matter of law requires that "the evidence, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's."  Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).  The Ninth Circuit upholds

any jury verdict supported by substantial evidence. <u>Id.</u> Substantial evidence is that relevant evidence that a reasonable mind would accept as adequate to support a conclusion. <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346 (9th Cir. 1992).

This court reviews the district court's grant of a new trial under the law of the regional circuit. <u>Mentor H/S, Inc. v. Med. Device Alliance, Inc.</u>, 244 F.3d 1365, 1374 (Fed. Cir. 2001). In the Ninth Circuit, "a grant of a new trial is reviewed for abuse of discretion." <u>Id.</u> (<u>citing</u> <u>United States v. 4.0 Acres of Land</u>, 175 F.3d 1133, 1139 (9th Cir. 1999)). "Thus, [this court] may find that a district court abused its discretion in ordering a new trial if the jury's verdict is not against the clear weight of the evidence." <u>Id.</u> Because the district court has broad discretion in decisions having preclusive effects on the parties, the appellate court applies the abuse of discretion standard for those decisions. <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 607 (9th Cir. 1992).

This court reviews a district court's grant of a summary judgment motion under the law of the regional circuit. <u>Chamberlain Group, Inc. v. Skylink Techs., Inc.</u>, 381 F.3d 1178, 1191 (Fed. Cir. 2004). In the Ninth Circuit, a grant of summary judgment is reviewed de novo. <u>Leonel v. Am. Airlines, Inc.</u>, 400 F.3d 702, 708 (9th Cir. 2005). "Summary judgment is appropriate if, drawing all factual inferences in favor of the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." <u>Combined Sys., Inc. v. Def. Tech. Corp.</u>, 350 F.3d 1207, 1209 (Fed. Cir. 2003).

**A.**

In the main appeal, CollegeNet contends that, in granting JMOL of noninfringement of the '042 patent, the district court misconstrued the "in a format

specified by the institution" limitation.  The context of the term's usage is shown above in representative claim 16.  The district court instructed the jury as follows:

> User information provided to the institution by the servicer is available in an <u>unlimited number of formats</u> and is processed wholly by the third party forms servicer and not the institution.  That is, the function is one of <u>providing limitless formats</u> for the transfer of user information from the servicer to the institution with no additional formatting or mapping performed by the institution.
>
> This construction does not preclude formatting, mapping, or other manipulation of the user information data by the institution once it is received by the institution in a format specified by the institution.
>
> Any reference to "<u>unlimited number of formats</u>" and "<u>limitless formats</u>" should be interpreted to mean that the third party forms servicer provides the user information to the institution in <u>any format specified</u> by the institution.
>
> "in a <u>format</u> specified by the institution" means in any <u>file format</u>, and it may include any other type of format, specified by the institution.

(Emphases added).

The '042 patent does not expressly define these disputed claim terms.  Thus, this court, like the district court, must derive the meaning of these disputed claim terms from their usage and context.  This court seeks a term's usage in the ordinary and accustomed meaning of the words amongst artisans of ordinary skill in the relevant art at the time of invention.  See Phillips v. AWH Corp., 2005 WL 1620331 at *5 (Fed. Cir. 2005) (en banc) (citing Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004)); Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001).  Indeed, "[t]he inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation."  Phillips, 2005 WL 1620331 *5.  "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim

in which the disputed term appears, but in the context of the entire patent, including the specification." Id. Thus, a patent applicant may use the words in the specification, prosecution history, or both "in a manner inconsistent with its ordinary meaning." Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp., 320 F.3d 1339, 1347 (Fed. Cir. 2003) (citing Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1325-26 (Fed. Cir. 2002)). In other words, a patent applicant may consistently and clearly use a term in a manner either more or less expansive than its general usage in the relevant community, and thus expand or limit the scope of the term in the context of the patent claims. See Ballard Med. Prods. v. Allegiance Healthcare Corp., 268 F.3d 1352, 1361 (Fed. Cir. 2001) (noting that an applicant may disclaim claim scope during prosecution); Middleton, Inc. v. Minn. Mining & Mfg. Co., 311 F.3d 1384, 1388 (Fed. Cir. 2002) (explaining that in order to disavow claim scope, a patent applicant must clearly and unambiguously express surrender of subject matter during prosecution). In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims. Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1326 (Fed. Cir. 2002).

In this case, this court agrees with CollegeNet that the district court erred in construing the claim limitation "a format specified by the institution" to require an unlimited number of formats. First, the district court improperly read the term "format" to mean "any file format." The specification and claims use the word "format" in its customary sense to mean the arrangement of data for storage or display. See Phillips, 2005 WL 1620331 at *9 ("'customary meaning' refers to the 'customary meaning in [the]

art field'") (citing Home Diagnostics, Inc. v. LifeScan, Inc., 381 F.3d 1352, 1358 (Fed. Cir. 2004)).  For example, in describing data formatting, the '042 patent states:

> Not only are the individual data elements tailored to the specifications of a particular institution, the entire data set is formatted to conform to that [institution's] needs. The data formats may include 1) comma separated values, 2) tab delimited values, 3) fixed length formats, 4) name/value pairs, and 5) EDI 189. For all of these methods, of course, the data is ordered as required (e.g., Social Security number first, last name second, high school name 33rd, etc.).

'042 patent, col. 20, l. 66 to col. 21, l. 6.  By listing five exemplary data formats, this passage suggests that an institution may tailor the arrangement of data to its needs within reasonable parameters, namely within one of the supported data formats.  While the particular set of supported formats may indeed be broader than those specifically listed in the specification, at no point, however, does the patent require support for an "unlimited" number of formats.  Id., col. 3, ll. 52-54 ("[T]he invention is not limited, however, to the processing of any particular type of form or to the use of any particular network or database.").  Thus, the district court's definition of "format" was unnecessarily narrow.

The district court also overlooked this court's precedent on the meaning of "a."  "It is well settled that the term 'a' or 'an' ordinarily means 'one or more.'"  Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1370 (Fed. Cir. 2002).  The district court replaced "a" with "any."  For this proposition, the trial court relied on passages from the specification, which state that the invention "allows the information submitted by the applicant to be transmitted to each institution in any data format that the institution requests so the institution is not required to convert the data to a usable format." '042 patent, col. 8, ll. 22-26 (emphasis added).  The specification also states:

> The completed application is transmitted to the institution with the data in <u>any</u> format that the institution prefers. The institution can therefore upload the data directly into its applicant or student information system database, merging the information seamlessly into their existing work flow, thereby avoiding the additional expense and errors of re-keyboarding the information. The forms engine thus has the capability of outputting application information universally across platforms.

<u>Id.</u> at col. 9, ll. 4-13 (emphasis added). Based on these passages, the district court reasoned that the claim language requires an unlimited number of formats because it contains no express numeric limitation. <u>CollegeNet, Inc., v. ApplyYourself, Inc.</u>, Nos. CV-02-484-HU, CV-02-1359-HU, slip. op. at 8 (D. Or. Sept. 3, 2003) (<u>Claim Construction Reconsideration</u>).

Contrary to the district court's conclusion, the claim language's use of "a" contains the limitation of one or more. In context, the specification notes that the institution may choose any format that is "requested" and "usable." <u>See</u> '042 patent, col. 8, ll. 22-26.[1] In other words, the '042 patent merely requires the institution to specify an acceptable format so it does not have to convert the data to another format. The patent does not require an infinite number of format choices in advance. Instead, the patent accommodates a system that allows the institutions to choose amongst a finite set of supported format choices. This choice qualifies as "a format specified by the institution" in the words of the claim.

ApplyYourself points to the prosecution history to further advance its position that the district court correctly required an unlimited number of formats. During prosecution of the parent '278 application, co-inventor and CollegeNet CEO James Wolfston

---

[1] As quoted above, the invention "allows the information submitted by the applicant to be transmitted to each institution in any data format that the institution <u>requests</u> so the institution is not required to convert the data to a <u>usable</u> format." (Emphases added.)

distinguished his invention over ApplyWeb I by stating "ApplyWeb I could not process the applicant information to put it into a form specified by the college." **[A5905]** Mr. Wolfston further explained that the ApplyWeb I program was "too inflexible to provide the customized application format and customized data processing uploads required by the participating institutions." Contrary to ApplyYourself's contentions, Mr. Wolfston's statements do not require his invention to offer an infinite selection of formats. Rather, Mr. Wolfston's statements merely distinguish his invention from an inflexible, non-customizable item of prior art that provides data in a single, vendor-determined format without any input, selection or other specification from the institution.

In sum, in its determination that "a format specified by the institution" requires an unlimited number of formats, the district court defined "format" too narrowly by limiting it to any "file format" and erroneously imported the term "any" into the claim language, ignoring the ordinary meaning of the term "a."

### B.

CollegeNet next contends that, under the proper claim construction, substantial evidence supports the jury verdict of infringement. This court agrees, and therefore directs the district court to reinstate the jury's verdict of infringement. ApplyYourself's Request for Admission (RFA) responses admitted that both accused systems (Flagship and i-Class) "make[ ] user information available to an institution of higher education in a format specified by that institution of higher education." While the district court instructed the jury not to consider these admissions as binding, the district court still allowed the jury to consider the admissions as substantive evidence. In addition, ApplyYourself's manuals and marketing materials touted the systems' capability to

provide an institution with data in a variety of formats. This record evidence amply supports the jury verdict.

The jury also considered evidence that i-Class allowed institutions to view data directly on the Web "to create very customized reports." i-Class also made applicant data available using XML, which CollegeNet's expert testified is a kind of universal format that makes it usable by any institution without the need to re-key application data. CollegeNet's expert also testified that the i-Class Admissions Manual represents that ApplyYourself provides whatever format the institution wants. In addition, by directing the jury to determine only whether ApplyYourself's accused systems met the limitation relating to the format in which the third party forms servicer provides applicant information to educational or other institutions, the district court effectively instructed the jury that all other parts of claims 1, 16 and 32 were met.

This court therefore reverses the grant of JMOL and reinstates the jury verdict. In addition, because the jury verdict is also not against the clear weight of the evidence, this court also reverses the district court's alternative grant of a new trial on infringement.

## C.

The final issue raised in the main appeal concerns the district court's decision to dismiss without prejudice ApplyYourself's affirmative defense and counterclaim asserting invalidity of the '042 patent. After ApplyYourself rested its case at trial, which included offering evidence of invalidity, but before CollegeNet had presented its rebuttal, ApplyYourself abandoned its prior art invalidity defense and counterclaim. The district court dismissed ApplyYourself's defense and counterclaim without prejudice, rather

than with prejudice, because it found that CollegeNet had kept the claim construction "in flux" throughout trial. CollegeNet, Inc., v. ApplyYourself, Inc., Nos. CV-02-484-HU, CV-02-1359-HU, slip. op. at 37 (D.Or. Jan. 20, 2004). CollegeNet argues the trial court should have dismissed ApplyYourself's defense and counterclaim with prejudice, because ApplyYourself sought dismissal only after presenting its case on invalidity.

While CollegeNet's argument has some merit, this court affirms the district court's ruling because the district court did not abuse its discretion. The trial court has discretion to develop the record fully and decide when the record is adequate to construe the claims. To the extent that the record remains somewhat flexible during its development, the trial court has the discretion to determine whether a party has had an adequate opportunity to present invalidity arguments in the changing claim construction environment, and whether a party has acted in a reasonably timely manner in requesting dismissal of a claim without prejudice. Given the wide discretion afforded district courts to manage trial practice, this court does not perceive that the district court abused its discretion.

**D.**

In its cross-appeal, ApplyYourself argues that the district court's grant of summary judgment of infringement of the '278 patent was improper, because it was based on an incorrect construction of the term "automatically." However, before reaching the merits of ApplyYourself's appeal, this court must first address whether ApplyYourself waived its right to challenge the construction of this term. Rule 51 of the Federal Rules of Civil Procedure provides that "no party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury

retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51 (2002).[2] Though not formally objecting to the jury instruction and risking the loss of a right to appeal, ApplyYourself did flag the instruction in its Joint Submission of Jury Instructions as "disputed." ApplyYourself also referred the court to the Markman ruling, in which the district court rejected ApplyYourself's proposed construction, and to ApplyYourself's construction of "automatic" in the Joint Claims Construction Statement. CollegeNet, Inc. v. ApplyYourself, Inc., Nos. CV-02-484-HU, CV-02-1359-HU (D.Or. Dec. 19, 2002) (Markman ruling). Thus, while ApplyYourself's actions may have been "deficient in terms of the plain language of Rule 51," they "fall[ ] within the limited exception we have recognized for a pointless formality." Voohries-Larson v. Cessna Aircraft Co., 241 F.3d 707, 714 (9th Cir. 2001). "Where the district court is aware of the party's concerns with an instruction, and further objection would be unavailing, we will not require a futile formal objection." Gulliford v. Pierce County, 136 F.3d 1345, 1348 (9th Cir. 1998) (citations and quotation marks omitted). Therefore, this court finds ApplyYourself did not waive this argument.

Now turning to the merits of ApplyYourself's cross-appeal, this court concludes that the district court gave "automatically" its proper construction. The term is a limitation of all the claims of the '278 patent, and is shown supra in representative claim 1. The district court construed "automatically" to mean "once initiated, the function is performed by a machine, without the need for manually performing the function." Markman ruling, slip op. at 30. ApplyYourself maintains that this construction is wrong.

---

[2] This court is aware of the 2003 amendments to Fed. R. Civ. P. 51. However, because the amendments became effective after the trial in this case, the previous version of Fed. R. Civ. P. 51 applies to this appeal.

It asserts that "automatically" means a "process that occurs <u>without human intervention</u>, such that a human does not have the option to intercede and alter the flow of that process." The district court's construction is supported by the language of the claims, the specification, and the prosecution history; therefore this court affirms the grant of summary judgment.

Claim 1 uses the word "comprising." "The transitional term 'comprising' . . . is inclusive or open-ended and does not exclude additional, unrecited elements or method steps." <u>Georgia-Pacific Corp. v. United States Gypsum Co.</u>, 195 F.3d 1322, 1327-28 (Fed. Cir. 1999). "A drafter uses the term 'comprising' to mean 'I claim at least what follows and potentially more.'" <u>Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.</u>, 212 F.3d 1377, 1383-84 (Fed. Cir. 2000). Thus, consistent with this court's precedent, the district court correctly adopted CollegeNet's inclusive definition and rejected ApplyYourself's preclusive definition. While claim 1 does not expressly provide for human intervention, the use of "comprising" suggests that additional, unrecited elements are not excluded. Such elements could include human actions to expressly initiate the automatic storing or inserting, or to interrupt such functions.

This construction does not read "automatically" out of the claims, as ApplyYourself suggests, because a machine still performs the claimed functions without manual operation, even though a human may initiate or interrupt the process. The district court's automatic dishwasher and auto-pilot examples also support this court's understanding of automatic processes that contemplate human intervention. "[S]imply because a human has to load [an automatic dishwasher] and press the start button, and has the ability to turn it off mid-cycle, does not mean that the device does not

'automatically' wash the dishes." Markman ruling, slip. op. at 83. Similarly, "an 'auto-pilot' which is turned on by a human and necessarily must be able to be interrupted by a human once the automatic process is engaged . . . remains an 'automatic' device." Id. slip. op. at 83-84. Thus, the claim language supports the district court's interpretation.

In addition, the district court's construction of "automatically" is consistent with one of the problems the invention sought to redress: avoiding the manual re-entering of the same information for every college application a prospective student desires to complete. '278 patent, col. 1, ll. 27-30. The '278 patent solves this problem by inserting common information into subsequent application forms, without the human user re-entering it. Adding a human initiation or interruption element would not alter the invention's solution to this problem.

The prosecution history also supports the district court's construction. The system disclosed in U.S. Patent No. 5,640,577 (issued June 17, 1997) (the Scharmer system or reference) obtains data from a database on a mainframe computer and displays it on a display terminal as a database report. The patent applicants explained:

> Some of the displayed data is saved in memory at the display terminal on which it is displayed, and is then inserted onto a form. Report data to be saved is identified by its coordinates on the display screen, which coordinates had to have been previously programmed into the saving function. An operator can also enter data into a form before the form is saved, but the information typed in by the operator, although saved as part of the form, is not saved in a database independent of the form. Consequently, the data is not available from such a database for use on subsequent forms. None of the data manually entered by the operator on one form can be used to automatically fill in subsequent forms. Scharmer teaches a one way flow of data from the database into the forms, and nothing the user does can add to or change the data in the database that is the source of information for completing subsequent forms.

<u>Markman</u> ruling, slip. op. at 92-93. The patent applicants then amended claims 1 and 21 to include the term "automatically." The district court correctly concluded that the patent applicants' prosecution-related comments supported its interpretation of "automatically." <u>Markman</u> ruling, slip. op. at 98. The addition of "automatically" to the claim language did not prohibit human interaction; it merely decreased the need for the user to insert information into a form. In addition, the distinction over Scharmer was not that the applicants' invention eliminated the requirement of manual input of data into a form. Rather, the distinction was that

> instead of a one-way flow of information from a database where a machine inputs information which has previously been stored in the database by some other process, into a form, the claimed invention allows a two-way flow of information in that the user, by filling out and saving an application form, enters data into the database which can then be accessed by the forms engine to allow the forms engine to input that data into a second form.

<u>Id.</u> Thus, the forms engine "automatically", <u>i.e.</u>, without human intervention, extracts data from the database and inserts that information into the second form. The patent applicants distinguished the Lextron reference on similar grounds. Therefore, because the district court's claim construction of "automatically" was correct, the district court's grant of summary judgment of infringement was proper.

**E.**

ApplyYourself also challenges the district court's refusal to grant a new trial on the jury's finding of infringement as to various dependent claims of the '278 patent. However, having affirmed the district court's grant of summary judgment of infringement of claims 1, 9, 10 and 21 of the '278 patent, there is no reason for this court to reach this argument. After all, infringement of even a single claim entitles a patentee to damages. Therefore, even if the district court had concluded that the infringement verdicts on

04-1202,-1222,-1251                    18

claims 6-8 and 27 of the '278 patent were against the clear weight of the evidence, the damages awarded on the '278 patent would still stand.

## III.

In conclusion, because the district court misconstrued the phrase "in a format specified by the institution" in the '042 patent, this court reverses the grant of JMOL and reinstates the jury verdict of infringement. This court also holds that the district court correctly dismissed without prejudice ApplyYourself's counterclaim and affirmative defenses that the '042 patent was invalid. In addition, this court holds the district court correctly construed the '278 patent's "automatic" limitation and correctly denied ApplyYourself's motion for a new trial on the claims relating to the '278 patent's "in a format specified by the institution" limitation.

## COSTS

Each party shall bear its own costs.

### AFFIRMED-IN-PART, REVERSED-IN-PART