**STAR LOCK SYSTEMS, INC., Plaintiff,**

v.

**DIXIE–NARCO, INC., et al., Defendants.**

No. 2:03–cv–616.

United States District Court, S.D. Ohio, Eastern Division.

Aug. 30, 2006.

Thomas Brennan Ridgley, James M. Burns, William H. Oldach, III, Vorys Sater Seymour & Pease LLP, Washington, DC, for Plaintiff.

James Snoffner Savage, III, McFadden, Winner & Savage, Stephen Eric Chappelear, Hahn Loeser & Parks, D. Patrick Kasson, Reminger & Reminger Co., L.P.A., Lawrence David Walker, Taft Stettinius & Hollister, Brian K. Murphy, Murray Murphy Moul & Basil, John Cooper McDonald, John Patrick Gilligan, Schottenstein Zox & Dunn, Columbus, OH, Daniel A. Crowe, Kenneth J. Mallin, Bryan Cave LLP, St. Louis, MO, Gregory M. Smith, Heather A. Boice, John S. Letchinger, Wildman Harrold Allen & Dixon, Joseph M. Kinsella, Jr., Michael D. Lake, Factor & Lake, Ltd., Vladimir I. Arezina, Wallenstein & Wagner Ltd., Chicago, IL, for Defendants.

## OPINION AND ORDER

FROST, District Judge.

The captioned case involves a patent infringement dispute between Plaintiff, Star Lock Systems, Inc. ("Star Lock"), and Defendants, TriTeq Lock & Security, LLC, Dixie–Narco, Inc., Royal Vendors, Inc., PepsiAmericas, Inc., and G & J Pepsi–Cola Bottlers, Inc.[1] As part of this litigation, the parties have requested that the Court construe various patent language pursuant to *Markman v. Westview Instruments, Incorporated,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). This claims-construction decision serves that function.

## I. Background

Given the procedural posture of this litigation, the Court need not and shall not describe the facts in great detail here. Of import here is that Star Lock is the owner of Patent No. 5,269,161 ("the '161 patent"). The company applied for the patent on March 27, 1991 (relating back to the earlier-obtained Patent No. 5,022,243), and the patent issued on December 14, 1993. The '161 patent is titled "Latching System" and involves technology for a locking assembly.

On July 9, 2003, Star Lock filed the instant suit, claiming that TriTeq has infringed on the '161 patent. Various delays ensued while the parties attempted to settle the litigation and then proceeded to a reexamination period in the U.S. Patent Office. The parties' dispute at this juncture focuses on the following language contained within in the '161 patent:

> 26. Latching apparatus for releasably latching a first door element, such as a vending machine door, or the like, and a second door element, such as a vending machine frame, or the like, said apparatus comprising:
>
> a post member including, at least, a latching portion which includes at least one notched surface;
>
> a latching assembly defining a passage for accepting said latching portion of said post member therein, and including, at least, a latch means for effectuating a grip on said notched surface when said latching portion of said post member is within said passage;

1. The various defendants have given TriTeq primary responsibility for handling the patent-construction aspect of the defense.

a releasing means for releasing said grip between said notched surface and said latch means; and

a cinch cam means for exerting an axial cinching force on said post member.

('161 Patent, col. 14, lines 63–68, col. 15, lines 1–9.)

27. Apparatus of claim 26, wherein said post member is supported by one of the door elements and includes, at least, a coupling segment and a radial pin which protrudes radically from said coupling segment,

wherein said latching assembly is supported by the other of the door elements,

wherein said cinch cam means includes, at least, a force-receiving cam surface and a force-exerting cam surface,

further including a primary cylindrical cam means for exerting a primary axial force opposite said cinching force on said cinch cam means, and

wherein said cinch cam means is constructed to:

through said force-receiving cam surface, receive said primary axial force from said primary cylindrical cam means and convert said axial force into a rotational force which effects rotation of said cinch cam means, and

through said force-exerting cam surface, convert said rotational force into said axial cinching force and transfer said cinching force to said coupling segment of said post member through said radial pin.

('161 Patent, col. 15, lines 10–32.)

28. Apparatus of claim 26, wherein said apparatus further comprises a primary cylindrical cam means for exerting a primary axial force opposite said cinching force on said cinch cam means,

wherein said post member further comprises a coupling segment and a radial pin which protrudes radially from said coupling segment, and wherein said cinch cam means comprises a force-receiving cam surface and a force-exerting cam surface, said cinch cam means constructed to:

through said force-receiving cam surface, receive said primary axial force from said primary cylindrical cam means and convert said axial force into a rotational force which effects rotation of said cinch cam means, and

through said force-exerting cam service, convert said rotational force into said axial cinching force and transfer said cinching force to said coupling segment of said post member through said radial pin.

('161 Patent, col. 15, lines 33–50.) The Court notes that as a result of proceedings during the stay of this case, the independent Claim 26 has been canceled. Claims 27 and 28 are based on Claim 26, however, and incorporate its language.

The parties have completed briefing the claim-construction issues (Docs.# 104, 105, 108, 109), and on August 4, 2006, the Court held a *Markman* hearing.

## II. Claim Construction

### A. Standards Involved

■ The Federal Circuit has explained that " '[i]t is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." ' " *Varco, L.P. v. Pason Systems USA Corp.,* 436 F.3d 1368, 1372–73 (Fed.Cir.2006) (quoting *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed.Cir.2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1115 (Fed.Cir.2004))). Consequently, the mean-

ing and scope of a patent's claims lie at the heart of any patent dispute.

■■■ The purpose of a *Markman* hearing is to ascertain the meaning of a patent's claims so that it is clear precisely what has been patented and, by consequence, the protections the patent therefore affords the patent holder. *See Phillips*, 415 F.3d at 1312. *See also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed.Cir.1995) ("When a court construes the claims of the patent ... the court is defining the federal legal rights created by the patent document"), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). There is no "rigid algorithm for claim construction." *Phillips*, 415 F.3d at 1324. Rather, in construing the meaning of a patent's claims, the Court is guided by a set of principles that the Federal Circuit has described as follows:

> The claim terms " 'are generally given their ordinary and customary meaning.' " *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996)). "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." *Id.* "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* "In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims." *Collegenet, Inc. v. Applyyourself, Inc.*, 418 F.3d 1225, 1231 (Fed.Cir.2005) (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed.Cir.2002)).

*Varco, L.P.*, 436 F.3d 1368, 1372–73. The starting point in claim construction there-

fore lies with the language of the claims themselves. *Purdue Pharma L.P. v. Endo Pharmaceuticals, Inc.*, 438 F.3d 1123, 1135–36 (Fed.Cir.2006) (citing *Phillips*, 415 F.3d at 1312). In considering a patent's language, a court should apply the plain meaning rule, presumptively giving claim terms their ordinary, plain meaning. *Teleflex*, 299 F.3d at 1325. A court may, however, depart from a term's plain meaning if the patentee has acted as a lexicographer or otherwise limited the scope of the invention through a clear disclaimer in the specification or prosecution history. *Phillips*, 415 F.3d at 1316–17.

■■■ Of considerable import to claim construction, then, is the intrinsic evidence—the claim language, the specification, and the prosecution history as applicable. *World Kitchen (GHC), LLC v. Zyliss Haushal Twaren AG*, 151 Fed. Appx. 970, 972 (Fed.Cir.2005) (citing *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed.Cir. 2001)); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). When this intrinsic evidence provides an unambiguous description of the scope of the invention, reliance on extrinsic evidence is improper. *Vitronics Corp.*, 90 F.3d at 1582.

■■■ But although less significant than intrinsic evidence, extrinsic evidence is still of value to claim construction when necessary. *Phillips*, 415 F.3d at 1317. This latter category encompasses such things as expert and inventor testimony, as well as texts such as treatises and dictionaries. *Id.* (quoting *Markman*, 52 F.3d at 980). A court may entertain expert testimony for numerous purposes, such as

> to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person

of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field.

*Phillips,* 415 F.3d at 1318. The value of expert testimony in regard to claim construction is qualified, however, as an expert cannot offer an opinion of any value that is at odds with the intrinsic evidence of a patent. *Id.* (quoting *Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 716 (Fed.Cir.1998)); *Playtex Prods., Inc. v. Procter & Gamble Co.,* 400 F.3d 901, 908 n. 1 (Fed.Cir.2005).

 Some patent language, such as much of the language involved in the instant case, constitute "means-plus-function" claim elements. Use of this format arises from the statutory explanation that

An element in a claim for a combination may be expressed as a means or step for performing a specific function without the recital of structure material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6. When a claim uses the word "means" in connection with a function, a rebuttable presumption arises that treatment under the statute is warranted unless the claim " 'recites sufficient structure, material, or acts to perform the claimed function.' " *Callicrate v. Wadsworth Mfg., Inc.,* 427 F.3d 1361, 1368 (Fed. Cir.2005) (quoting *Micro Chem., Inc. v. Great Plains Chem. Co.,* 194 F.3d 1250, 1257 (Fed.Cir.1999)).

 The Federal Circuit has explained that when the statute applies,

Claim construction of a means-plus-function limitation includes two steps. First, the court must determine the claimed function. *JVW Enters. v. Interact Accessories, Inc.,* 424 F.3d 1324, 1330 (Fed. Cir.2005). Second, the court must identify the corresponding structure in the written description of the patent that performs that function. *Id.*

*Applied Medical Resources Corp. v. U.S. Surgical Corp.,* 448 F.3d 1324, 1332 (Fed. Cir.2006). Importantly, a court cannot construe a means-plus-function limitation by adopting a function that differs from the function explicitly recited in the claim. *JVW Enterprises, Inc.,* 424 F.3d at 1331. Nor can a court import the functions of a working device into the specific claims, rather than reading the claims for their meaning independent of any working embodiment. *Id.*

Cognizant of these governing principles and having entertained argument, as well as having reviewed the scope of the prior art, the Court shall now address each claim-construction issue in turn.

**B. Analysis**

 Claims 27 and 28 of the '161 patent incorporate language set forth in Claim 26.[2] The Court shall therefore begin with Claim 26.

TriTeq's contention that the preamble requires that the meaning, function, and structural equivalents of the means-plus-function clauses relate to vending machine applications is correct only if the company means to avoid an overly restrictive reading confining the apparatus to vending machines. The preamble uses "a vending

---

**2.** Claims 27 and 28 incorporate the text of Claim 26. Additionally, the parties agree that the identical language of Claim 27 and Claim 28 has the same meaning. This Court agrees, given that "the meaning of a term in a claim must be defined in [a] manner that is consistent with its appearance in other claims in the same patent." *CVI/Beta Ventures, Inc. v. Tura LP,* 112 F.3d 1146, 1159 (Fed.Cir.1997) (citing *Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 632, 3 USPQ2d 1109, 1113 (Fed. Cir.1987)).

machine door, or the like" and "a vending machine frame, or the like," thereby providing illustrative but hardly exhaustive or even overtly restrictive language. The proper emphasis is to be placed on "first door element" and "second door element," with vending machines satisfying such elements. Other mechanisms satisfying the two-door-element requirement in a way similar to vending machines would fall within the scope of the apparatus claimed.

■ Turning to the initial post member language to be construed, the Court agrees that the term "post" is used in its traditional sense. The meaning of "latching portion" is also fairly apparent; it is simply the portion of the post that when engaged latches. As TriTeq posits, however, the meaning of "notched surface" is potentially more problematic.

Triteq is correct that the embodiment of the post notched surface displays a plurality of notches or teeth. But Star Lock is also correct in asserting that nothing in the claim language itself mandates such a plurality. Thus, the Court construes the claim to require *at least* one notch to create a notched surface, with additional notches (or teeth) falling within the scope of "notched surface." To conclude otherwise, reading the claim language as requiring a series of notches or teeth, would be *to impute to the claim language a limita*tion from the specification. The targeted language thus means "a post or shaft member of a latching device that features at least one notched surface consisting of one or more axial notches or teeth, with the latching portion interacting with the latch assembly."

■ This construction—permitting but absolutely not requiring multiple notches—also implicitly informs the latching assembly claim language. The Court construes this language to mean "an open space or area of at least sufficient dimen-

sion to accept the notched surface of the post member." The subsequent element "latch means for effecting a grip on said notched surface" is expressed in means-plus-function terminology, with the broad function being "effecting a grip on said notched surface" of the inserted post. Because the parties disagree over what "effecting a grip" means, they consequently also disagree over the language to use and the related requisite structure. "Effecting a grip" necessarily mandates that the post member be within the passageway at the time of the gripping (otherwise there is nothing to grip). Star Lock's reading of the language is expansive; the company argues that the pertinent language means "providing structure situated within a notch in the latching portion of the post member to prevent removal of the post member." Triteq's reading is more specific and thus more restrictive; the defense contends that the term grip refers to biasing moveable latch elements toward the axial center of a latch post or passage so that the latch elements are biased into contact with the latching portion of the post during latching, and with the smooth surfaces during releasing. Because the function targets gripping, not releasing (even if such a contrary function is logically intertwined), the Court reads the claim language to state only what it must state. In other words, the relevant function is "effecting a grip on the notched surface of the inserted post by filling the notch or notches with moveable latch element(s) so as to prevent withdrawal of the post."

■ The parties of course disagree over the requisite structure. TriTeq includes O-rings in its proposal, while Star Lock argues that the O-rings are simply part of the preferred embodiment that cannot be imputed as a limitation to the claim. As Star Lock notes, the claims at issue here do not require moveable latch

elements and a biasing means such as Claims 1, 12, and 29; claim differentiation teaches that the claims involved here thus do not require O-rings. The requisite structure that performs the identified function is latch elements 27 and 28.

TriTeq's previously mentioned concern with the smooth surface of the post member does correctly figure into the claim language "a releasing means for releasing said notched surface and said latch means." The parties correctly agree that this is another means-plus-function clause that expressly states the function. After initially proposing a different reading, Star Lock now asserts in this litigation that "releasing said grip" means "rotating the post 90 degrees." This would indeed appear to be a logical construction given the specification. But the possibility of notches or teeth cut to require less than a 90 degree rotation exists, albeit unlikely. Thus, TriTeq's proposal of the function being "releasing said grip between said notched surface and said latch means" is more appropriate, if general. The function here is "removing the gripping obstruction from the post notch or notches so as to permit withdrawal of the post." The structure for carrying out this function is coupling shaft 61 or cinch cam 93 acting on the radial guide pin 113.

The next claim language to be construed raises the issue of asserted indefiniteness. In addition to alternatively proposing some limited definitions, Triteq first argues that the language "axial cinching force" is indefinite, which would render the claim invalid.[3] The rationale behind TriTeq's argument is that, despite the statutory presumption of validity, the language is indefinite because there the term does not appear in (and is undefined in) the specification.

The Federal Circuit has explained that an indefinite claim is one that is "not amenable to construction" or is "insolubly ambiguous." *Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1347 (Fed.Cir.2005). When addressing a claim of indefiniteness, a court can look to intrinsic evidence such as the claim specification. *Id.* Thus, a claim is not indefinite when meaning can be readily ascertained from the specification description by a person experienced in the field. *Energizer Holdings, Inc. v. International Trade Commission,* 435 F.3d 1366, 1369 (Fed.Cir. 2006) (citing *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.,* 401 F.3d 1367, 1371 (Fed.Cir.2005); *Personalized Media Communications, LLC v. International Trade Commission,* 161 F.3d 696, 705 (Fed.Cir.1998)). If a claim is amenable to construction, it is not insolubly ambiguous and is therefore not invalid for indefiniteness. *Id.* at 1370 (citing *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,* 359 F.3d 1367, 1371 (Fed.Cir.2004)).

The key issue is whether a person of ordinary skill in the art would understand what "axial cinching force" means. Turning to the specification, the Court finds no identification or mention of the term. It is well settled, however, that a failure to provide an explicit antecedent basis for a term does not always render a claim indefinite. *Id.* (quoting MPEP § 2173.05(e) (8th ed. Rev.2, May, 2004)). Here, despite the lack of repeated usage of the contested term, the patent is not so flawed so as to fail to inform the public of the scope of the patent. Given the context of the term usage at issue, an individual who is skilled in the art could reasonably ascertain the term's meaning. The term "axial cinching force" as used here means "a force on the post member that pulls the

---

3. The company similarly attacks "primary cy- lindrical cam," and "primary axial force."

post member inward along an inward-outward axis."

■■■ The Court agrees with Star Lock's contention that the language at issue, despite its format, is not a means-plus-function clause.[4] As opposed to employing "cinching means" or some such language, the claim language used identifies a specific structure, the cinch cam labeled as structure member 93, that is sufficient to perform the function. When read in light of the ordinary meaning of the words employed, the language therefore means that "member cinch cam 93 exerts a force on the post member that pulls the post member inward along an inward-outward axis."

■■■ Claim 27 also presents this Court with the need to construe "coupling segment" and "radial pin." TriTeq offers that the words in the preamble are entitled to their ordinary and customary meaning. Star Lock has offered meanings in accordance with that principle.[5] "Coupling segment" means "a segment of the post where the post couples to another member that effects an action on the post." "Radial pin" means "a pin extending in at least one radial direction from the coupling segment of the post member."

■■■ The next language in Claim 27 to be construed is "wherein said cinch cam means includes, at least, a force-receiving cam-surface and a force-exerting cam surface." TriTeq again invokes its indefiniteness argument, citing the clause's reliance on "cinch cam means," while Star Lock proposes an interpretation of the clause. As noted, the language is not indefinite. The Court construes the language to mean that "at least one cam surface receives a force from a structural member and at least one other cam surface exerts a force on another structural member."

■■■ Claim 27 then presents another means-plus-function clause: "further including a primary cylindrical cam means for exerting a primary axial force opposite said cinching force on said cinch cam means." TriTeq attacks "primary cylindrical cam means" and "primary axial force" as indefinite, arguing that they, together with "cinch cam means," renders Claim 27 invalid. Star Lock proposes a function of "applying a force toward the latching portion of the post member," which, while not precisely incorrect, is potentially misleading in that it arguably invites misreading so that the force is applied to the post member.

There is no indefiniteness here. One skilled in the art, affording the words their ordinary meaning, could understand what is meant here. The Court reads the language to present the function of "exerting a first or initial force in the inward direction along the inward-outward axis."[6] The requisite structure is lock housing cam 98, specifically cam surfaces 123 and 125.

The remainder of Claim 27 simply employs in an operational overview the vari-

---

4. The Court notes that even if this were a mean-plus-function clause, the end result would be essentially the same given that the function—exerting an axial cinching force on the post member—is apparent and given the presence of the structures needed to fulfill that function. And, if so interpreted, the structure would be identified as cinch cam 93.

5. Star Lock errs in terming the "coupling segment" a "coupling portion," but the apparent scrivener's error does not undermine the correct definition proposed and adopted. (Doc. # 119, at 4.)

6. The *opposite* force from the axial force referenced in the patent is not a force in the *other* direction (*i.e.*, outward or away from the coupling segment of the post), but is instead the rotational force related to the cinch.

ous elements discussed above (and is not indefinite for the aforementioned reasons). The parties should thus read this language using the meanings set forth herein. Similarly, as the parties noted at the *Markman* hearing, construction of Claim 27 language provides a *de facto* construction of Claim 28. The parties must therefore apply the foregoing definitions to Claim 28. For ease of reference the Court has set forth its constructions in the following chart.

| Claims 27 & 28—Limitations from Claim 26 | |
| --- | --- |
| Patent Language | Construction |
| Latching apparatus for releasably latching a first door element, such as a vending machine door, or the like, and a second door element, such as a vending machine frame, or the like, said apparatus comprising: | (There is no construction necessary for this preamble.) |
| a post member including, at least, a latching portion which includes at least one notched surface; | a post or shaft member of a latching device that features at least one notched surface consisting of one or more axial notches or teeth, with the latching portion interacting with the latch assembly |
| a latching assembly defining a passage for accepting said latching portion of said post member therein, | an open space or area of at least sufficient dimension to accept the notched surface of the post member |
| and including, at least, a latch means for effectuating a grip on said notched surface when said latching portion of said post member is within said passage; | MPF Clause<br><br>*Function:* effecting a grip on the notched surface of the inserted post by filling the notch or notches with moveable latch element(s) so as to prevent withdrawal of the post Structure: latch elements 27 and 28 |
| a releasing means for releasing said grip between said notched surface and said latch means; and | MPF Clause<br><br>*Function:* removing the gripping obstruction from the post notch or notches so as to permit withdrawal of the post<br><br>Structure: coupling shaft 61 or cinch cam 93 acting on the radial guide pin 113. |
| a cinch cam means for exerting an axial cinching force on said post member. | member cinch cam 93 exerts a force on the post member that pulls the post member inward along an inward-outward axis |
| Additional Language (Claim 27, informs Claim 28) | |
| Patent Language | Construction |
| Apparatus of claim 26, wherein said post member is supported by one of the door elements and includes at least, a coupling segment and a radial pin which protrudes radially from said coupling segment, wherein said latching assembly is supported by the other of the door elements, | "Coupling segment" means "a segment of the post where the post couples to another member that effects an action on the post."<br><br>"Radial pin" means "a pin extending in at least one radial direction from the coupling segment of the post member." |
| wherein said cinch cam means includes, at least, a force-receiving cam surface and a force-exerting cam service, | at least one cam surface receives a force from a structural member and at least one other cam surface exerts a force on another structural member |
| further including a primary cylindrical cam means for exerting a primary axial force opposite said cinching force on said cinch cam means, and | MPF Clause<br><br>*Function:* exerting a first or initial force in the inward direction along the inward-outward axis<br>*Structure:* lock housing cam 98, specifically cam surfaces 123 and 125 |

wherein said cinch cam means is constructed to: through said force-receiving cam surface, receive said primary axial force from said primary cylindrical cam means and convert said axial force into a rotational force which effects rotation of said cinch cam means, and through said force-exerting cam surface, convert said rotational force into said axial cinching force and transfer said cinching force to said coupling segment of said post member through said radial pin.

(This clause describes the operation of various elements set forth and interpreted above.)

## III. Conclusion

The Court concludes that the foregoing claim constructions control. The parties shall therefore proceed in a manner consistent with the conclusions of this Opinion and Order.

**IT IS SO ORDERED.**